Filed 8/19/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| KEVIN MICHAEL REILLY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | S202280 |
| v. | ) | |
| | ) | Ct.App. 4/3 G045118 |
| THE SUPERIOR COURT OF ORANGE | ) | |
| COUNTY, | ) | |
| | ) | Orange County |
| Respondent; | ) | Super. Ct. No. M11860 |
| | ) | |
| THE PEOPLE, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| _____ | ) | |

We granted review in this case to determine whether a court must dismiss a Sexually Violent Predator Act (SVPA) civil commitment petition filed under Welfare and Institutions Code section 6600 et seq.[1] if the Office of Administrative Law determines that the initial evaluations supporting the petition were conducted under an assessment protocol that did not comply with its procedural requirements. We conclude the court was not required to dismiss the commitment proceedings under these circumstances. Instead, an alleged sexually violent predator (SVP) must show that any fault that did occur under the assessment protocol created a *material* error. (See *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 913 (*Ghilotti*).) Because the Court of Appeal erroneously

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

dismissed the SVPA commitment petition against Kevin Michael Reilly without requiring a finding of material error, we reverse the Court of Appeal's judgment.

BACKGROUND

A. *SVPA Statutory Framework*

Under the SVPA, the state can civilly commit individuals found to be SVPs after they conclude their prison terms. (See *People v. McKee* (2010) 47 Cal.4th 1172, 1186-1187.) Section 6600, subdivision (a)(1) defines the SVP as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

The Welfare and Institutions Code outlines the procedure for determining whether a person is an SVP. (§ 6600 et seq.) Under section 6601, whenever the Secretary of the Department of Corrections and Rehabilitation (Department) determines that a person may be an SVP, the secretary refers that person to the Department and the Board of Parole Hearings for an initial screening. (§ 6601, subds. (a) (1), (b).) In screening, the Department considers "whether the person has committed a sexually violent predatory offense" and reviews "the person's social, criminal, and institutional history." (*Id.,* subd. (b).) If the Department determines that the individual is likely to be an SVP, it refers him or her to the State Department of State Hospitals (SDSH; formerly the Department of Mental Health (former DMH)) for a "full evaluation." (*Ibid.*)

Two mental health experts conduct the full evaluation. (*Ibid.*) The director of the SDSH (Director) appoints these experts, who must be either psychologists or psychiatrists. (§ 6601, subd. (d).) Each expert "shall evaluate the person in accordance with a standardized assessment protocol . . . to determine whether the person is a sexually violent predator as defined in [section 6600]. The

2

standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders," including "criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).)

If both evaluators agree that the person has a diagnosed mental disorder, so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director forwards a request that a petition for commitment be filed as specified under section 6601, subdivision (i). However, if the evaluators disagree on the individual's SVP status, the Director "shall arrange for further examination of the person by two independent professionals . . . ." (§ 6601, subd. (e).) At this stage, the petition "shall only be filed if both independent professionals who evaluate the person pursuant to subdivision (e) concur that the person meets the criteria for commitment specified in subdivision (d)." (§ 6601, subd. (f).) Read together, subdivisions (d), (e), and (f) of section 6601 amount to an unambiguous statutory prefiling requirement "that a petition for commitment or recommitment may not be filed unless two evaluators, appointed under the procedures specified in section 6601, subdivisions (d) and (e), have concurred that the person currently meets the criteria for commitment under the SVPA." (*Ghilotti*, *supra*, 27 Cal.4th at p. 909.) Where this initial requirement is not met, the commitment may not proceed. (*Id.* at p. 910.)

The SVPA also provides for evaluations to be updated or replaced after a commitment petition has been filed. (§ 6603, subd. (c).) Section 6603, subdivision (c) was enacted to clarify the right of the attorney seeking commitment to obtain up-to-date evaluations, in light of the fact that commitment under the SVPA is based on a "current mental disorder." (*Albertson v. Superior Court* (2001) 25 Cal.4th 796, 802; see *id.* at pp. 803-804.) If an updated or

3

replacement evaluation results in a split of opinion as to whether the individual meets the criteria for commitment, the SDSH must obtain two additional evaluations in accordance with subdivision (f) of section 6601. (§ 6603, subd. (c).) However, although initial evaluations conducted under section 6601 must agree, a lack of concurrence between updated or replacement evaluations does not require dismissal of the petition. (*Gray v. Superior Court* (2002) 95 Cal.App.4th 322, 328 (*Gray*).) Rather, the updated evaluations' primary purpose is evidentiary or informational. (*Ibid.*) Mandatory dismissal is not required where one or both of the later evaluators conclude the individual does not meet the criteria for commitment. (*Ibid.*)

After a petition for commitment has been filed in the superior court, and once replacement evaluations have been completed, a new round of proceedings ensues. "The superior court first holds a hearing to determine whether there is 'probable cause' to believe that the person named in the petition is likely to engage in sexually violent predatory criminal behavior upon release. [Citations.] The alleged predator is entitled to the assistance of counsel at this hearing. If no probable cause is found, the petition is dismissed. However, if the court finds probable cause within the meaning of this section, the court orders a trial to determine whether the person is an SVP under section 6600." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1146, fn. omitted.) Though civil in nature, this trial contains a number of procedural safeguards commonly associated with criminal trials, including the alleged SVP's right to a jury trial (§ 6603, subd. (a)), to assistance of counsel (*ibid.*), and to a unanimous jury finding that he or she is an SVP beyond a reasonable doubt before he or she may be committed. (§ 6604.)

B. *The Office of Administrative Law Determination*

In order to ensure alleged SVPs are evaluated properly under section 6601, the SDSH publishes a handbook and standardized assessment protocol for

4

evaluators to use. In 2008, the Office of Administrative Law received a petition alleging that 10 provisions in the SDSH's Clinical Evaluator Handbook and Standardized Assessment Protocol (Aug. 2007) (Handbook and Assessment Protocol) had not been adopted according to California's Administrative Procedures Act (APA).

The APA, beginning at Government Code section 11340, requires that administrative agency guidelines be adopted according to specific procedures in order to qualify as "regulation[s]." (Gov. Code, § 11340.5, subds. (a) & (b).) The APA defines regulations as "every rule, regulation, order, or standard of general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Gov. Code, § 11342.600.) As we have explained, "One purpose of the APA is to ensure that those persons or entities whom a regulation will affect have a voice in its creation [citation], as well as notice of the law's requirements so that they can conform their conduct accordingly [citation]. The Legislature wisely perceived that the party subject to regulation is often in the best position, and has the greatest incentive, to inform the agency about possible unintended consequences of a proposed regulation. Moreover, public participation in the regulatory process directs the attention of agency policymakers to the public they serve, thus providing some security against bureaucratic tyranny [citation]." (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568–569; see also *Voss v. Superior Court* (1996) 46 Cal.App.4th 900, 908–909.) The APA procedure is designed to ensure reliability in the regulatory process. Therefore, if a government agency acts in reliance on an invalid regulation under the APA, its action is also generally considered invalid if objection to the regulation has been timely raised. (See *Savient Pharmaceuticals, Inc. v. Department of Health Services* (2007) 146 Cal.App.4th 1457, 1468-1471 [agency action to delist an AIDS drug rescinded where agency based action on "underground

5

regulation"].)  Indeed, any regulation not properly adopted under the APA is considered invalid.  (*Patterson Flying Service v. Department of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 429; see Cal. Code Regs., tit. 1, § 250.)

In 2008, when the Office of Administrative Law determined that provisions of the 2007 Handbook and Assessment Protocol met the definition of a regulation and should have been adopted in accordance with the APA, several SVPA petitions were still either awaiting a probable cause hearing, or pending trial following the probable cause hearing, as in Reilly's case.  (Off. of Administrative Law, 2008 OAL Determination No. 19 (Aug. 15, 2008) p. 3 (OAL Determination).)  Many of those individuals, including Reilly, had received some evaluations under the 2007 assessment protocol.  The OAL Determination clarified that its ruling concerned only whether the 2007 assessment protocol constituted a regulation under Government Code section 11342.600 because "[n]othing in this analysis evaluates the advisability or the wisdom of the underlying action or enactment."  (OAL Determination, at p. 1.)  The Office of Administrative Law recognized that it "has neither the legal authority nor the technical expertise to evaluate the underlying policy issues involved."  (*Ibid.*)  In other words, its conclusions addressed only the procedural validity of the 2007 assessment protocol; it did not address the protocol's substantive validity.  We now discuss how the invalid 2007 assessment protocol affected Reilly's pending SVPA trial.

FACTS

Reilly was originally committed as an SVP in 2000, after he completed a three-year prison term for engaging in lewd and lascivious conduct.  In 2008, the Department sought a petition for recommitment.  It referred Reilly to the former DMH to determine whether he was still an SVP as defined in the statutory scheme under section 6601 et seq.  Dr. Clark Clipson and Dr. Nancy Webber evaluated Reilly under the SVPA.  Both evaluators agreed that he was still an SVP, and in

6

July 2008, the recommitment petition was filed in the superior court. In March 2009, the court found probable cause to believe that Reilly was an SVP and set the matter for trial.

In August and September 2009, while Reilly was awaiting trial, both evaluators conducted updated evaluations of Reilly under section 6603, subdivision (c). Both evaluators again concluded that Reilly was an SVP. They conducted these updated evaluations in accordance with a new, emergency assessment protocol that the SDSH had adopted in February 2009 in response to the OAL Determination that the 2007 assessment protocol was procedurally invalid. The Office of Administrative Law eventually approved this emergency assessment protocol in September 2009, and it has since continued to be used for evaluations.

In November 2009, *In re Ronje* (2009) 179 Cal.App.4th 509 (*Ronje*), concluded that alleged SVPs who had been evaluated under the invalid 2007 assessment protocol were entitled to entirely new evaluations and a new probable cause hearing "based on those new evaluations." (*Ronje,* at p. 521.) Ronje was awaiting trial on his SVP commitment proceeding when the Office of Administrative Law determined that his section 6601 evaluations had been conducted under the invalid assessment protocol. (*Ronje*, at p. 513.) Ronje filed a petition for writ of habeas corpus, seeking dismissal of his commitment petition or new evaluations conducted under a valid assessment protocol. (*Id.* at p. 518.) The *Ronje* court held that the invalid protocol used in conducting the evaluations did not "deprive the court of fundamental jurisdiction over the SVPA commitment petition." (*Ibid*.) The court also held that Ronje was not required to show legal error or materiality (the court specifically used the term "prejudice") in successfully challenging the use of the invalid assessment protocol because he was making a pretrial challenge to "technical irregularities" in his SVP commitment

7

proceeding. (*Id.* at p. 517.) Instead, *Ronje* held that the court was required to order new evaluations "using a valid assessment protocol" and "another probable cause hearing under section 6602, subdivision (a) based on those new evaluations." (*Id.* at p. 521.)

In March 2010, Reilly asked the trial court to cancel his scheduled trial, conduct new evaluations, and, if necessary, hold a new probable cause hearing in light of *Ronje*. The trial court granted Reilly's motion, and in early 2011, the SDSH assigned Drs. Clipson and Webber to evaluate Reilly for the third time in less than three years. In February 2011 — 18 months after the updated 2009 evaluations concluded that Reilly met the SVPA statutory requirements — both evaluators concluded that he no longer met the criteria for commitment as an SVP.

In March 2011, before his second probable cause hearing could be held, Reilly filed a plea in abatement. He sought dismissal of the commitment petition on the ground that the SVPA expressly requires the state to obtain two concurring evaluations before filing it. In April 2011, the court denied Reilly's plea, as well as those brought by nine other individuals on the same or similar grounds. A different trial court denied a motion to dismiss that a 10th person named in an SVPA petition had filed. As for Reilly, the court granted the district attorney's motion to compel him to undergo a mental evaluation by its retained mental health professional and to grant that expert access to his state hospital records.

Before the district attorney could act on the granted motion, Reilly filed a petition for writ of mandate or prohibition with the Court of Appeal, seeking dismissal of the SVPA commitment petition against him. The court issued an order to show cause and stayed the trial court proceedings. In March 2012, the Court of Appeal granted Reilly's request and ordered the petition dismissed. The court held that dismissal was required because the third (and post-*Ronje*) evaluations of Reilly did not meet the requirements of section 6601, subdivision

8

(e) or subdivision (f). The court held that no petition could be filed without two concurring evaluations. The Court of Appeal concluded that the trial court lacked jurisdiction to conduct any further proceedings. We granted the district attorney's petition for review to determine whether Reilly was entitled to dismissal of the SVPA commitment petition under these circumstances.

DISCUSSION

When evaluations initially supporting the filing of a commitment petition were conducted under an assessment protocol later determined to be an invalid regulation, must new evaluations be ordered and a new probable cause hearing be held? The Courts of Appeal, including the court below, have consistently relied on *Ronje* to answer this question. These courts hold that when section 6601 evaluations were conducted using a subsequently invalidated assessment protocol, the proper remedy is to order new evaluations using a valid assessment protocol and only to proceed to a new probable cause hearing if the new evaluations support the commitment proceedings. (See, e.g., *Davenport v. Superior Court* (2012) 202 Cal.App.4th 665, 671-672 (*Davenport*); *Ronje, supra*, 179 Cal.App.4th at p. 521.) Although the People did not seek review of *Ronje*, we cannot separate its analysis from our determination of the case before us. As noted, the effect of an improper assessment protocol on the SVPA evaluative process is a recurring issue that has been raised in many cases awaiting this decision. We therefore exercise our discretion to decide the issue.

The People do not contest the finding that the original assessment protocol used here amounted to an invalid regulation and that its use constituted error. Instead, they challenge the Court of Appeal's conclusion that an alleged SVP need not demonstrate the materiality of such error in order to obtain dismissal of his SVPA petition. We agree with the People, and conclude that the *Ronje* court erred when it ordered replacement evaluations in these circumstances without requiring

9

a determination that the underlying mistake in the assessment protocol amounted to material error. We also find that the Court of Appeal here erred when it relied on *Ronje* to order dismissal of the SVPA petition, which was filed to determine whether "it is likely" that Reilly "will engage in sexually violent criminal behavior." (§ 6601, subd. (a)(1).)

The People contend that *Ronje* incorrectly interpreted our holding in *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 (*Pompa-Ortiz*), which addressed postconviction challenges to irregularities affecting a criminal defendant's preliminary hearing rights. *Pompa-Ortiz* held that "irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination." (*Ibid.*) This rule rests on the belief that a fair trial generally renders harmless any preliminary hearing errors. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1190.) Courts of Appeal have applied this standard of review without difficulty to cases where SVPs have challenged an SVPA assessment protocol following a full probable cause hearing and trial. (See *People v. Hayes* (2006) 137 Cal.App.4th 34, 51; *People v. Talhelm* (2000) 85 Cal.App.4th 400, 405; *People v. Butler* (1998) 68 Cal.App.4th 421, 435.)

The proper resolution of pretrial challenges to irregularities in SVPA commitment proceedings is far less settled. Our court has yet to speak on the issue. *Pompa-Ortiz* did observe in passing that "[t]he right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities." (*Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.) *Ronje,* in turn, relied on this dictum in concluding that a court need not find prejudice before crafting a remedy when improper assessment protocols were used in SVPA commitment proceedings.

(*Ronje, supra,* 179 Cal.App.4th at p. 517.)  However, *Pompa-Ortiz* does not state a general proposition.  Instead, the dictum in question merely notes that pretrial challenges to criminal preliminary examination procedures *may*, in some circumstances involving jurisdictional error that are not applicable here, warrant relief without a showing of prejudice.  (*Pompa-Ortiz, supra*, 27 Cal.3d at p. 529.)

To the extent that *Ronje* relied on *Pompa-Ortiz* to hold that materiality is always presumed if an assessment protocol error is raised before trial, we disagree. The general rule derived from *Pompa-Ortiz* is that nonjurisdictional irregularities in preliminary hearing procedures should be reviewed for prejudice.  (*Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.)  In *Pompa-Ortiz,* this rule was applied to a postconviction challenge.  But it applies with equal force to a pretrial challenge that addresses an issue that a subsequent fact finder will reconsider.

*People v. Konow* (2004) 32 Cal.4th 995 (*Konow*) and *People v. Standish* (2006) 38 Cal.4th 858 (*Standish*) outline the significance of *Pompa-Ortiz* in other contexts.  These cases support the conclusion that Reilly, as the petitioner for a writ of mandate who bears the burden of pleading and proof, must demonstrate more than procedural error to obtain dismissal of his SVPA commitment petition. In *Konow*, the magistrate judge incorrectly believed he was precluded from dismissing a complaint in the furtherance of justice under Penal Code section 1385.  (*Konow, supra,* 32 Cal.4th at p. 1026.)  We acknowledged that *Pompa-Ortiz* held that " 'denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion.' "  (*Konow, supra,* at p. 1023, quoting *Pompa-Ortiz, supra,* 27 Cal.3d at p. 537.)  We explained that *Jennings v. Superior Court* (1967) 66 Cal.2d 867 provided guidance on whether the magistrate's failure to dismiss the complaint deprived the defendant of a "substantial right."  (*Konow, supra*, at p. 1023.)  We concluded that "a defendant is denied a substantial right affecting the

11

legality of the commitment when he or she is subjected to prejudicial error, that is, error that reasonably might have affected the outcome [citation]." (*Id.* at p. 1024.)

In *Standish*, the People appealed the superior court's order setting aside the defendant's information on the ground that he should have been released on his own recognizance. In deciding whether the erroneous failure to grant release mandated dismissal, we emphasized that "[o]ur decision in *People v. Pompa-Ortiz* must not be read overbroadly. That case did not establish that *any and all* irregularities that precede or bear some relationship to the preliminary examination require that the information be set aside . . . ." (*Standish*, *supra*, 38 Cal.4th at p. 885.) Instead, following *Konow*, we explained that although a defendant need not "demonstrate that it is reasonably *probable* he or she would not have been held to answer in the absence of the error," relief from preliminary hearing error may be afforded only in the presence of an error that " 'reasonably *might* have affected the outcome' in the particular case." (*Standish*, *supra,* at pp. 882-883.) *Standish* concluded that failure to release the defendant on his own recognizance did not constitute a denial of a substantial right. (*Id.* at p. 882.)

*Ghilotti* also defines what our cases require in order to set aside an evaluator's error in employing an incorrect legal standard to determine whether an alleged SVP poses a risk of reoffending. (*Ghilotti, supra*, 27 Cal.4th at p. 915.) There, both evaluators concluded that the alleged SVP (Ghilotti) no longer met the statutory requirements for commitment. (*Ibid.*) The director of the former DMH disagreed with these conclusions and wrote a letter asking the district attorney to file the petition for recommitment in spite of the evaluators' conclusions. (*Id.* at p. 896.) In his letter, the director explained his view that the evaluators had incorrectly determined that Ghilotti was not an SVP under the statutory criteria. The director asserted, " 'each evaluator makes a threshold case in the body of each report that . . . Ghilotti is "likely" to reoffend.' " (*Id.* at p. 898, italics omitted.)

12

The petition for recommitment was ultimately submitted based on the director's independent opinion that Ghilotti met the criteria for recommitment. (*Id.* at p. 897.)

Ghilotti challenged the validity of the recommitment petition. The trial court dismissed the petition, concluding that the director may not overrule or disregard the evaluators' recommendation against commitment. (*Ghilotti, supra*, 27 Cal.4th at pp. 898-900.) We observed that section 6601 expressly requires that two evaluators must agree that a person " 'has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody' " before the SVPA petition may be filed. (*Ghilotti*, at p. 894; see § 6601, subd. (d).) We further noted that the evaluators' recommendations are subject to judicial review at the request of either party. We concluded that only if, after such review, it appears that the evaluators were influenced by a "material legal error," their recommendations are invalid. (*Ghilotti, supra*, 27 Cal.4th at p. 895.) Such error is material if "there appears a reasonable probability, sufficient to undermine confidence in the outcome, that the error affected the evaluator's ultimate conclusion." (*Ghilotti*, at p. 913.)

"If the court's review of the reports indicates that the conclusions drawn by the evaluators are not infected by legal error . . . or that any error was immaterial, it must accept the recommendations set forth in the reports and take the appropriate responsive action, either by dismissing the petition, or by going forward with proceedings to determine whether the person is an SVP. If the court finds material legal error in an evaluator's report, the court shall provide the evaluator opportunity promptly either to correct the report or to prepare a new report . . . ." (*Ghilotti, supra*, 27 Cal.4th at pp. 913-914.)

*Ghilotti* discussed evaluators who have incorrectly applied a valid assessment protocol. Here, we consider evaluators who have correctly applied an

invalid assessment protocol. In light of the foregoing precedent, we conclude that relief arising from use of an invalid protocol in an SVP evaluation should depend on a showing that the error was material. We therefore reject Reilly's contention that this "[c]ourt should, in accordance with the *Ronje* ruling, hold that valid evaluations that are conducted under procedural irregularities always require starting the proceedings over under the SVPA." *In re Ronje*, *supra*, 179 Cal.App.4th 509, and its progeny omitted the materiality requirement, and we disapprove them to the extent they are inconsistent with our ruling today.[2]

By requiring that assessment protocol errors must rise to the level of materiality, we ensure that meritorious petitions can proceed, while mandating reevaluation, and possible dismissal, where their merit is in doubt. To be sure, the 2007 and 2009 SVPA assessment protocols differ, and courts should decide how they might affect a particular evaluation on the merits of each case.[3] Indeed, if an

---

[2] We note that although *Davenport* omitted the materiality requirement, it did attempt to craft a remedy for post-*Ronje* evaluations in which experts hold different opinions, an issue *Ronje* did not address. (*Davenport, supra,* 202 Cal.App.4th at p. 673.) Indeed, *Davenport* addressed a situation that is different from the one we resolve here. But *Davenport* did note that the petitioner in that case did "not point to any substantive defect in the 2007 protocol, or any prior protocol, and there is no evidence . . . that the use of a procedurally invalid protocol had a material effect on the conclusions in the original evaluations." (*Ibid*.) Obviously, we agree with *Davenport*'s observation on the importance of a materiality finding and only disapprove the opinion to the extent it did not require one. We also agree with that court's reliance on *Gray, supra,* 95 Cal.App.4th at page 329, and *People v. Superior Court* (*Salter*) (2011) 192 Cal.App.4th 1352, 1357-1358, in finding that the People are entitled to have the trier of fact resolve the conflict in the evidence when there are conflicting professional opinions (i.e., splits of opinion) on an alleged SVP's status. (*Davenport, supra,* 202 Cal.App.4th at p. 673.)

[3] For example, the February 2009 protocol was only six pages long, as compared to the 68-page 2007 protocol. The 2007 protocol gave a step-by-step process for evaluators to follow. The 2009 protocol essentially gives the evaluator more discretion in how to conduct the evaluation, but the evaluator is informed about the requirements of the law, the issue that must be opined on, and the risk

alleged SVP can demonstrate that a material error occurred in the evaluative process, for the purposes of section 6601, both concurring evaluations are invalid and are rendered a legal nullity. New evaluations must therefore replace them, ensuring that an alleged SVP who has proved that material error occurred in the proceedings receives adequate protection under the SVPA. (*See Ghilotti, supra,* 27 Cal.4th at pp. 913-914.)

Requiring that the error be material also ensures that the Legislature's purpose in enacting section 6600 et seq. is followed. The legislative history shows the Legislature did not intend that courts interpret section 6601's procedural requirements with unnecessary strictness to prevent the trier of fact from ultimately determining each individual's SVP status. In 1999, section 6601 was amended to add the following language: "A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law." (§ 6601, subd. (a)(2), as amended by Stats. 1999, ch. 136, § 1, p. 1831.) The purpose of the amendment was "to clarify the application of the SVP law to prevent the unintended and dangerous release of an offender pending determination of an SVP petition." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 11 (1999-2000 Reg. Sess.) as introduced Dec. 7, 1998.) Read together, the amendment and the legislative statement of the bill's purpose indicate the Legislature's clearly expressed preference that SVPA commitment petitions be adjudicated on their merits.

---

factors to consider; these have not changed from the 2007 protocol. (See Cal. Department of Mental Health, Standardized Assessment Protocol for Sexually Violent Predator Evaluations (Feb. 2009) p. 1.)

CONCLUSION

An alleged SVP, as the petitioner for a writ of mandate, is the party who bears the burden of pleading and proving the facts on which he or she bases a claim for relief. In this case, two evaluators concluded in 2008, under the 2007 protocol, and again in 2009, under the subsequently adopted 2009 protocol, that Reilly was an SVP. Under these circumstances, where Reilly was found to be an SVP under the new protocol, it is clear that the 2007 protocol error did not materially affect the outcome of his probable cause hearing. Reilly has therefore not shown that the invalid assessment protocol materially affected his initial evaluations. Absent material error, "once a petition has been properly filed and the court has obtained jurisdiction, the question of whether a person is a sexually violent predator should be left to the trier of fact . . . ."[4] (*Gray, supra,* 95 Cal.App.4th at p. 329.)

Because a probable cause determination had been made, but Reilly's trial date was dismissed following *Ronje,* we conclude that he must proceed to a new trial.[5] The trial court should consider any updated evaluations submitted to it

---

[4]    As noted, *Ghilotti* states that an error is material if "there appears a reasonable probability, sufficient to undermine confidence in the outcome, that the error affected the evaluator's ultimate conclusion." (*Ghilotti*, *supra*, 27 Cal.4th at p. 913.) *Konow* defines material error as "an error that reasonably might have affected the outcome [citation]." (*Konow, supra,* 32 Cal.4th at p. 1024.) Whether these two formulations differ is an issue we need not decide here, because under either formulation we find that Reilly has failed to demonstrate material error.

[5]    Although not applicable here, in future cases in which the alleged SVP has only been evaluated under the 2007 assessment protocol and in which a court finds probable cause that the individual meets the SVP criteria, the individual may petition the court to set aside the probable cause determination on the ground that the use of the invalid 2007 assessment protocol materially affected the outcome of the hearing. The court may then order new evaluations under section 6603 et seq., using the 2009 assessment protocol, and may, in its discretion, order a new probable cause hearing if the new evaluations support the petition. If a 2007 assessment protocol error is identified before a probable cause determination, the

16

together with the initial evaluations that supported the original SVPA commitment petition, giving each evaluation whatever weight it deems appropriate. (§ 6603, subd. (c).) Reilly retains his statutory rights to obtain new psychological examinations on his behalf before trial and to introduce other evidence that he believes will assist the court in determining his status as an SVP. (§ 6603, subd. (a).) The People have the corresponding right to order updated evaluations before trial. (§ 6603, subd. (c)(1).) In addition, on remand the trial court may reconsider any interim orders it made before Reilly filed his plea in abatement. (See *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1100.)

**DISPOSITION**

Based on the foregoing analysis, we reverse the Court of Appeal's judgment and remand the matter to that court for proceedings consistent with our opinion.

CHIN, J.


WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.

---

alleged SVP may file a plea in abatement asserting the procedural error and asking the court to substitute new evaluations that use the 2009 assessment protocol.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Reilly v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 204 Cal.App.4th 829
**Rehearing Granted**

_____

**Opinion No.** S202280
**Date Filed:** August 19, 2013

_____

**Court:** Superior
**County:** Orange
**Judge:** Richard M. King

_____

**Counsel:**

Deborah A. Kwast and Frank Ospino, Public Defenders, Jean Wilkinson, Chief Deputy Public Defender, Denise Gragg, Sharon Petrosino and Mark S. Brown, Assistant Public Defenders, for Petitioner.

Michael Leon Seaton as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General. Dane R. Gillette, Chief Assistant Attorney General, Julie L .Garland, Assistant Attorney General, Steven T. Oetting and Bradley A. Weinreb, Deputy Attorneys General, for Real Party in Interest.

Tony Rackauckas, District Attorney (Orange) and Elizabeth Molfetta, Deputy District Attorney, for the Orange County District Attorney as Amicus Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mark S. Brown
Assistant Public Defender
14 Civic Center Plaza
Santa Ana, CA  92701-4029
(714) 834-2144

Bradley A. Weinreb
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2290