Filed 12/6/13  Schneider v. Superior Court CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| WILLIAM SCHNEIDER, | |
| Petitioner, | |
| v. | G046895 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. M8776) |
| Respondent; | O P I N I O N |
| THE PEOPLE, | |
| Real Party in Interest. | |


Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, David A. Hoffer, Judge. Petition denied.

Frank Ospino, Public Defender, Jean Wilkinson, Chief Deputy Public Defender, Sharon Petrosino and Mark S. Brown, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Elizabeth Molfetta, Deputy District Attorney, for Real Party in Interest.

\*          \*          \*

## INTRODUCTION

William Schneider is the subject of a commitment petition filed pursuant to the Sexually Violent Predator Act, Welfare and Institutions Code section 6600 et seq. (SVPA).[1] The respondent court found, pursuant to section 6602, probable cause existed to believe Schneider met the criteria for commitment as a sexually violent predator. By this petition for writ of mandate or prohibition, Schneider challenges the respondent court's decision to receive in evidence at the probable cause hearing two evaluation reports prepared by psychologists appointed to evaluate him pursuant to section 6601. For reasons we will explain, we deny the petition.

## OVERVIEW OF THE SVPA SCREENING AND EVALUATION PROCESS

The SVPA provides for involuntary civil commitment of an offender immediately upon conclusion of his or her prison term if the offender is found to be a sexually violent predator. (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 646 (*Reilly*); *People v. Yartz* (2005) 37 Cal.4th 529, 534.) A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) A "diagnosed mental disorder" is defined to include "a congenital or acquired condition affecting the emotional or volitional capacity that

---

[1] Further code references are to the Welfare and Institutions Code unless otherwise indicated.

2

predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

The procedure for commitment under the SVPA begins with an initial screen in which the Secretary of California's Department of Corrections and Rehabilitation (CDCR) determines whether a person in CDCR custody might be a sexually violent predator. (§ 6601, subd. (a)(1).) If the secretary determines the person might be a sexually violent predator, the secretary refers that person to the next level evaluation. (*Ibid.*)

After the secretary's referral, the person is screened by the CDCR and the Board of Parole Hearings in accordance with "a structured screening instrument" developed and updated by the State Department of State Hospitals (SDSH) in consultation with the CDCR. (§ 6601, subd. (b).) "If as a result of this screening it is determined that the person is likely to be a sexually violent predator, the [CDCR] shall refer the person to the [SDSH] for a full evaluation of whether the person meets the criteria in Section 6600." (*Ibid.*)

The procedures for a full evaluation are set forth in section 6601, subdivision (c) (section 6601(c)) and section 6601, subdivisions (d) through (i). Under section 6601(c) and section 6601, subdivision (d), the person is evaluated by two practicing psychiatrists or psychologists, or by one of each profession. The evaluations must be conducted "in accordance with a standardized assessment protocol, developed and updated by the [SDSH], to determine whether the person is a sexually violent predator as defined in this article." (§ 6601(c).) If both evaluators find the person "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," then the SDSH forwards a request to file a petition for commitment to the county of the person's last conviction. (§ 6601, subd. (d).) If the county's designated counsel concurs with the recommendation, then counsel files a petition for commitment in the superior court. (§ 6601, subd. (i).)

3

If one of the two professionals performing the evaluation does not conclude the person meets the criteria for commitment as a sexually violent predator, and the other concludes the person does meet those criteria, then the SDSH "shall arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g)." (§ 6601, subd. (e).) If an evaluation by two independent professionals is conducted, a petition for commitment may be filed only if both concur the person meets the criteria for commitment as a sexually violent predator. (§ 6601, subd. (f).)

Upon filing of the SVPA commitment petition, the superior court must review the petition and determine "whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the court determines the petition on its face supports a finding of probable cause, then it must order the person named in the petition to be kept in a secure facility until a probable cause hearing under section 6602 is conducted. (§ 6601.5.) The probable cause hearing must be conducted within 10 calendar days of the issuance of the order finding the petition would support a finding of probable cause. (*Ibid.*)

The purpose of the probable cause hearing is to determine whether "there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) If the court finds probable cause, it orders a trial to determine whether the person is a sexually violent predator under section 6600. (§ 6602, subd. (a).) The person named in the petition must remain in a secure facility between the time probable cause is found and the time trial is completed. (*Ibid.*)

## ALLEGATIONS OF THE PETITION AND THE RETURN

In September 1999, the Orange County District Attorney filed a petition for commitment under the SVPA alleging Schneider was a sexually violent predator as

4

defined in section 6600. Attached to the SVPA commitment petition were two evaluation reports of Schneider; one report was prepared by Dawn Starr, Ph.D., and the other was prepared by Kent W. Franks, Ph.D. In September 1999, a judge reviewed the petition and found it stated sufficient facts which, if true, would constitute probable cause to believe Schneider was likely to engage in sexually violent predatory criminal behavior on his release. As a consequence, Schneider was ordered to be detained, pursuant to section 6601.5, in a secure facility until the probable cause hearing.

Dr. Starr conducted updated evaluations of Schneider in 2001, 2003, 2005, 2006, and 2009. Nancy Rueschenberg, Ph.D., conducted an evaluation of Schneider in 2005 and updated evaluations in 2006 and 2009.

In August 2009, Judge Luis A. Rodriguez found, pursuant to section 6602, probable cause existed to believe Schneider met the criteria for commitment as a sexually violent predator. Judge Rodriguez ordered that Schneider be detained in a secure facility until trial.

In August 2008, the Office of Administrative Law (OAL) issued 2008 OAL Determination No. 19, in which the OAL determined the 2007 version of the SDSH's Clinical Evaluator Handbook and Standardized Assessment Protocol (Aug. 2007) (2007 SAP) used for SVPA evaluations amounted to an "underground regulation" because portions of the assessment protocol, though regulatory in nature, had not been adopted pursuant to Government Code section 11340.5, part of the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). (2008 OAL Determination No. 19 (Aug. 15, 2008) p. 3, available at <http://www.oal.ca.gov/res/docs/pdf/determinations/2008/2008_OAL_Determination_19.pdf> [as of Dec. 6, 2013]; see *Reilly*, *supra*, 57 Cal.4th at p. 649.) In *In re Ronje* (2009) 179 Cal.App.4th 509, 516-517 (*Ronje*), disapproved in *Reilly*, *supra*, 57 Cal.4th 641, we agreed with the OAL and likewise concluded the 2007 SAP was invalid as an underground regulation. In 2009, the SDSH issued the 2009 version of its Standardized Assessment Protocol for Sexually Violent

5

Predator Evaluations (Feb. 2009) (2009 SAP) as the new standardized assessment protocol for SVPA evaluations. In February 2009, the OAL took emergency regulatory action to adopt part of the 2009 SAP. In September 2009, the OAL made permanent the emergency regulatory action.

In response to *Ronje*, in November 2010, Judge James P. Marion[2] ordered new evaluations of Schneider, pursuant to section 6601, using a valid standardized assessment protocol and ordered a new probable cause hearing based on the new evaluations. In compliance with the court's order, the SDSH reassigned Dr. Starr and Dr. Rueschenberg to evaluate Schneider. In a report dated April 11, 2011, Dr. Starr concluded Schneider met the criteria for commitment as a sexually violent predator. In a report dated April 28, 2011, Dr. Rueschenberg also concluded Schneider met those criteria.

A probable cause hearing was conducted over several days in January and March 2012 before the respondent court. Dr. Starr and Dr. Rueschenberg testified at the probable cause hearing, and their 2011 evaluation reports were received in evidence.

At the outset of the probable cause hearing, Schneider presented a motion in limine to exclude "any" evaluation reports prepared by Dr. Starr and Dr. Rueschenberg. Schneider argued their 2011 evaluations of him were invalid because they were conducted in accordance with the 2009 SAP, which, he argued, is not a valid standardized assessment protocol under the SVPA and had not been promulgated as a regulation. In support of his motion, Schneider submitted declarations from two psychologists (Richard Wollert, Ph.D., and Robert L. Halon, Ph.D.), both of whom expressed the opinion that the 2009 SAP is not a "standardized assessment protocol," as that term is understood in the "scientific and psychological community." In opposition, the district attorney submitted a copy of a declaration, dated April 23, 2010, from Amy

---

[2]  We recognize and join in the public defender's respect, expressed in the writ petition, for our friend and colleague, the late Judge Marion.

Phenix, Ph.D., the psychologist who developed the SVPA standardized assessment protocols. Dr. Phenix expressed the opinion the 2009 SAP "comports with the generally accepted definition of a 'standardized assessment protocol'" and "comprises a 'standardized assessment protocol' according to general acceptance in the field of psychology."

The respondent court issued a written ruling that denied Schneider's motion in limine. The court concluded the 2009 SAP "meets and exceeds the statutory criteria of section 6601, subdivision (c)" and therefore is an actual standardized assessment protocol. The court denied Schneider's request to cross-examine Dr. Phenix because "the court bases its ruling on its own independent review of the 2009 SAP." The court also concluded (1) section IV.D. of the 2009 SAP, which requires the evaluators to use certain assessment tools, had been submitted to the OAL as an emergency regulation and approved as a permanent regulation in September 2009 and (2) the rest of the 2009 SAP consists of statements from the SVPA and case law and therefore did not require approval as a regulation by the OAL.

On March 16, 2012, the respondent court granted the district attorney's motion to receive in evidence Dr. Starr's April 2011 evaluation report and Dr. Rueschenberg's April 2011 evaluation report. The court then found, pursuant to section 6602, probable cause existed to believe Schneider met the criteria for commitment as a sexually violent predator.

### HISTORY OF WRIT PETITION PROCEEDINGS

In May 2012, Schneider filed this petition for writ of mandate or prohibition to challenge the respondent court's order receiving in evidence the 2011 evaluation reports of Dr. Starr and Dr. Rueschenberg. We summarily denied Schneider's writ petition.

Schneider petitioned the California Supreme Court for review of our order summarily denying his writ petition. He presented four issues for Supreme Court review, one of which was whether Dr. Starr's April 2011 evaluation report and Dr. Rueschenberg's April 2011 evaluation report were updated or new evaluations. The Supreme Court granted the petition for review and transferred the matter back to us with directions to vacate our order denying mandate and to issue an order directing the respondent court to show cause why the relief requested in the petition for writ of mandate or prohibition should not be granted. We complied with the Supreme Court's directions. The district attorney filed a return to Schneider's petition for writ of mandate or prohibition, to which Schneider filed a reply.

After oral argument, we vacated submission to allow the parties to file supplemental letter briefs addressing the impact of *Reilly*, *supra*, 57 Cal.4th 641, on this case. After receiving supplemental letter briefs from the district attorney and Schneider, we resubmitted the matter.

## DISCUSSION

## I.

### The Evaluators Conducted New Evaluations as Then Required by *Ronje*.

Schneider argues Dr. Starr's April 2011 evaluation report and Dr. Rueschenberg's April 2011 evaluation report were updated rather than new evaluations and, therefore, should not have been received in evidence at the probable cause hearing. We disagree. Under *Reilly*, *supra*, 57 Cal.4th 641, Schneider cannot prevail even if this argument has merit.

In *Reilly*, the Supreme Court concluded a court is not required to dismiss SVPA commitment proceedings if the OAL determines the initial evaluations supporting the SVPA commitment petition were conducted under a standardized assessment protocol

8

that did not comply with the OAL's procedural requirements. (*Reilly, supra*, 57 Cal.4th at p. 646.) "Instead, an alleged sexually violent predator (SVP) must show that any fault that did occur under the assessment protocol created a *material* error." (*Ibid.*) "Absent material error, 'once a petition has been properly filed and the court has obtained jurisdiction, the question of whether a person is a sexually violent predator should be left to the trier of fact . . . .'" (*Id.* at p. 656.) *Reilly* disapproved *Ronje, supra*, 179 Cal.App.4th 509, to the extent it required new evaluations using a valid standardized assessment protocol without a showing of material error. (*Reilly, supra*, at pp. 655, 656.)

In *Rabuck v. Superior Court* (Dec. 6, 2013, G046936) __ Cal.App.4th __, __ [page 10] (*Rabuck*), we concluded that absent a showing of material error in using the 2007 SAP, whether evaluation reports prepared using the 2009 SAP constituted new or updated ones would make no difference to their admissibility at the probable cause hearing. Thus, "[a]bsent a showing of material error, the [initial] evaluations of [Schneider] would be valid and would support filing the SVPA commitment petition, and the 2011 evaluations properly could serve as either new or updated evaluations under section 6603, subdivision (c)(1)." (*Id.* at p. __ [p. 10].) Schneider has not shown that use of an invalid assessment protocol materially affected his initial evaluations. (See *Reilly, supra*, 57 Cal.4th at p. 656.) Since evaluators concluded Schneider was a sexually violent predator under both the 2009 SAP and the 2007 SAP, "it is clear that the 2007 protocol error did not materially affect the outcome of his probable cause hearing." (*Ibid.*)

Schneider's contention the evaluations were "updates" rather than "new" has no merit even if it remains viable after *Reilly*. *Ronje* required new evaluations under section 6601(c); that is, evaluations conducted as though no prior diagnosis had been reached and no SVPA commitment petition had yet been filed. In contrast, updated evaluations are permitted under section 6603, subdivision (c)(1), "[i]f the attorney

9

petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment."

The evidence supported a finding that Dr. Starr's April 2011 evaluation report and Dr. Rueschenberg's April 2011 evaluation report were new evaluations of Schneider. At the probable cause hearing, Dr. Starr testified her 2011 evaluation was a new evaluation. She explained that while an updated evaluation considers only what has transpired since the prior evaluation, in preparing her April 2011 evaluation report, she considered all of her prior evaluation reports and all of Schneider's available prison and medical records. At the probable cause hearing, Dr. Rueschenberg testified her 2011 evaluation was a "new evaluation" under section 6600.

Our review of Dr. Starr's 67-page April 2011 evaluation report and Dr. Rueschenberg's 43-page April 2011 evaluation report confirms to us they are new evaluations under section 6601(c), not updated evaluations under section 6603, subdivision (c). Dr. Starr's April 2011 evaluation report states it is an "initial sexually violent predator evaluation" (capitalization, boldface, & underscoring omitted) and a "Ronje evaluation." Dr. Rueschenberg's April 2011 evaluation report states, "[t]he purpose of this current evaluation is to complete a new evaluation per the Ronje decision" and "[t]his evaluation replaces all previous reports by the undersigned and includes information from the current interview and all previous interviews with Mr. Schneider" (boldface omitted). Both Dr. Starr and Dr. Rueschenberg conducted clinical interviews of Schneider in 2011 as part of the new evaluations. Both reports show that Dr. Starr and Dr. Rueschenberg considered Schneider's entire psychiatric, family, criminal, and qualifying offense history, and reassessed all of the commitment criteria and risk factors. Neither Dr. Starr nor Dr. Rueschenberg merely updated previous diagnoses; rather, their reports demonstrate they both started anew in reaching the conclusion Schneider met the criteria for commitment as a sexually violent predator.

10

## II.

### The Evaluators Followed the 2009 SAP.

Schneider argues that Dr. Starr and Dr. Rueschenberg, though purporting to use the 2009 SAP, in fact used the 2007 SAP in preparing their 2011 evaluations of him. According to Schneider, the 2011 evaluation reports prepared by Dr. Starr and Dr. Rueschenberg demonstrate they used the 2007 SAP because those reports include the same headings, apply the same criteria, make the same findings, and use the same diagnostic tools and risk factors, as those required by the 2007 SAP.

Under *Reilly*, if Dr. Starr and Dr. Rueschenberg used the 2007 SAP in preparing their 2011 evaluation reports of Schneider, any error would be harmless unless he made a showing that use of the 2007 SAP resulted in material error. (*Reilly*, *supra*, 57 Cal.4th at p. 656 & fn. 5.) Neither in his writ petition nor his supplemental letter brief addressing *Reilly*, did Schneider make such a showing. Schneider does not contend any of the reports prepared by Dr. Starr and Dr. Rueschenberg, or any of their diagnoses and conclusions, are inaccurate or otherwise invalid.

Schneider argues Dr. Starr and Dr. Rueschenberg followed the 2007 SAP in their 2011 evaluations "[s]ince each of the doctor's reports contain[s] provisions required by the 2007 SAP, and these same provisions are not required by or even mentioned in the 2009 SAP." Dr. Starr's and Dr. Rueschenberg's 2011 evaluation reports did follow the format, outline, and structure provided in the 2007 SAP and did include notice, provisions, and findings required by that protocol. But the 2009 SAP does not prohibit them from doing so and does not prescribe a particular format, outline, or structure for an evaluation report. (*Rabuck*, *supra*, __ Cal.App.4th at p. __ [p. 12].) As Schneider argues, Dr. Starr's and Dr. Rueschenberg's 2011 evaluation reports used the headings "Identifying Data," "Findings," and "Conclusion" or "Conclusions" (boldface & some capitalization omitted), which were provided by the 2007 SAP. In *Rabuck*, *supra*, __

11

Cal.App.4th at page __ [page 12], we concluded, "those are logical and natural headings for sections within an SVPA evaluation report."

As further proof that Dr. Starr and Dr. Rueschenberg did not follow the 2009 SAP, Schneider asserts they drafted their conclusions in a specific format required by the 2007 SAP.[3] Section IV.C. of the 2009 SAP, *supra*, at page 3, identifies the question the evaluator must answer as "[d]oes the person being evaluated have a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody?" The findings in Dr. Starr's 2011 evaluation report and Dr. Rueschenberg's 2011 evaluation report track this question and answer it. "Dr. [Starr] and Dr. [Rueschenberg] drafted their respective conclusions in a format that is so obvious and logical that it cannot be said to be specific to the 2007 SAP." (*Rabuck*, *supra*, __ Cal.App.4th at p. __ [p. 13].)

Schneider contends Dr. Starr and Dr. Rueschenberg followed the 2007 SAP because they used procedures, diagnostic tests, and actuarial risk assessment tools specifically required by that protocol. In *Rabuck*, *supra*, __ Cal.App.4th at page __ [pages 13-14], we rejected a similar argument. We explained that "[u]nlike the 2007 SAP, which provided detailed instructions on how to conduct a sexually violent predator assessment and prepare an evaluation report, the 2009 SAP relies on each evaluator's exercise of 'independent professional judgment in the course of performing SVP [(sexually violent predator)] evaluations.' [Citation.]" (*Id.* at p. __ [p. 13].) We concluded that the evaluators' decision to follow procedures and practices and to apply

---

[3] Dr. Starr concluded: "Based on the above information, in my opinion, the patient, Mr. Schneider, meets the criteria as a Sexually Violent Predator as described in Section 6600(a) of the Welfare and Institutions Code." Dr. Rueschenberg concluded: "Based on the above information, it is this evaluator's professional opinion that **Mr. William[] Schneider <u>meets</u> the criteria as a sexually violent predator** as described in Section 6600(a) of the Welfare and Institutions Code."

12

tests, instruments, and actuarial risk tools that were required by the 2007 SAP did not mean they failed to use the 2009 SAP.  (*Id.* at p. __ [p. 14].)

Likewise, "the fact Dr. [Starr] and Dr. [Rueschenberg] decided to follow procedures and practices and to apply tests, instruments, and actuarial risk tools that were required by the 2007 SAP does not mean they failed to use the 2009 SAP." (*Rabuck*, *supra*, __Cal.App.4th at p. __ [p. 14].)  In compliance with the 2009 SAP, Dr. Starr and Dr. Rueschenberg explained in their respective 2011 evaluation reports how the tests, instruments, and risk factors they used had gained professional recognition or acceptance in the field of diagnosing, evaluating, or treating sexual offenders, how they were applied, and why they were appropriate to Schneider.

Schneider argues Dr. Starr and Dr. Rueschenberg used the 2007 SAP because, at the beginning of their 2011 evaluation reports, each stated she provided Schneider with a notice of evaluation as a sexually violent predator, presumably in the form attached as appendix B to the 2007 SAP.  We rejected the identical argument in *Rabuck*, *supra*, __Cal.App.4th at page __ [page 14].  Schneider also argues that Dr. Starr and Dr. Rueschenberg followed the 2007 SAP by including in their respective 2011 evaluation reports a statement, required by the 2007 SAP, on the question whether Schneider's future sexually violent acts and offenses would, or likely would, be predatory in nature.  "But the fact Dr. [Starr] and Dr. [Rueschenberg] answered a question presented by the 2007 SAP does not lead to the conclusion they did not follow the 2009 SAP and meet its requirements." (*Rabuck*, *supra*, __Cal.App.4th at p. __ [p. 15].)

### III.

### The 2009 SAP Is a Legitimate Standardized Assessment Protocol and Complies with Section 6601(c).

Schneider argues the 2009 SAP is invalid because it is not a standardized assessment protocol as that term is understood in the scientific and psychological

communities. In support of this argument, he relies on the declarations of Dr. Wollert and Dr. Halon, both of whom presented a definition of a standardized assessment protocol, reviewed the 2009 SAP, and concluded it did not come within that definition. The district attorney, in response, relies on Dr. Phenix's declaration. Dr. Phenix, who was instrumental in developing the assessment protocols under the SVPA, declared the 2009 SAP is a standardized assessment protocol according to generally accepted principles of psychology.

The respondent court did not base its decision on the declarations. Instead, the court upheld the 2009 SAP based on its "own independent review of the 2009 SAP" and concluded, "the 2009 SAP is a genuine one because it meets and exceeds the statutory criteria of section 6601, subdivision (c)." In *Rabuck*, *supra*, __ Cal.App.4th at page __ [pages 15-18], we concluded the 2009 SAP is a legitimate standardized assessment protocol as required by section 6601(c).

## IV.

### The 2009 SAP Was Properly Promulgated as a Regulation.

Schneider argues that if the 2009 SAP is a legitimate standardized assessment protocol, it is invalid nonetheless because it is an underground regulation that was not promulgated in accordance with the APA. But if the 2009 SAP was not promulgated in accordance with the APA, then Schneider would have the burden of showing material error (*Reilly*, *supra*, 57 Cal.4th at pp. 646, 656-657); that is, "the invalid assessment protocol materially affected his . . . evaluations" (*id.* at p. 656). He has not done so. In addition, in *Rabuck*, *supra*, __Cal.App.4th at page __ [pages 18-19], we concluded the 2009 SAP was validly promulgated as a regulation.

Government Code section 11350 identifies the limited grounds on which the validity of a regulation may be challenged. Schneider does not challenge the OAL's

14

approval of section IV.D. of the 2009 SAP on any of the grounds identified in Government Code section 11350.

## DISPOSITION

The petition for writ of mandate or prohibition is denied.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.