Filed 12/6/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROSS RABUCK,<br><br>    Petitioner,<br><br>              v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | G046936<br><br>(Super. Ct. Nos. M10338 & M11029)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, W. Michael Hayes, Judge. Petition denied.

Frank Ospino, Public Defender, Jean Wilkinson, Chief Deputy Public Defender, Sharon Petrosino and Mark S. Brown, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Elizabeth Molfetta, Deputy District Attorney, for Real Party in Interest.

\*         \*         \*

Ross Rabuck is the subject of a commitment petition filed pursuant to the Sexually Violent Predator Act, Welfare and Institutions Code section 6600 et seq. (SVPA).[1] In March 2012, the respondent court, pursuant to section 6602, found probable cause to believe Rabuck met the criteria for commitment as a sexually violent predator.

By this petition for writ of mandate or prohibition, Rabuck challenges the respondent court's decision to receive in evidence at the probable cause hearing two evaluation reports prepared in 2011 by psychologists appointed to evaluate him pursuant to section 6601. He makes these four contentions: (1) the evaluation reports were not based on new evaluations under section 6601, subdivision (c) (section 6601(c)) as required by *In re Ronje* (2009) 179 Cal.App.4th 509 (*Ronje*), disapproved in *Reilly v. Superior Court* (2013) 57 Cal.4th 641 (*Reilly*); (2) in conducting the evaluations and preparing the reports, the evaluators followed the 2007 version of the State Department of State Hospitals (SDSH), Clinical Evaluator Handbook and Standardized Assessment Protocol (Aug. 2007) (2007 SAP) that was held to be invalid in *Ronje*, instead of the 2009 version of the SDSH's Standardized Assessment Protocol for Sexually Violent Predator Evaluations (Feb. 2009) (2009 SAP); (3) the 2009 SAP is not a legitimate standardized assessment protocol as that term is understood in the scientific and psychological communities; and (4) the 2009 SAP is invalid as an underground regulation.

After we heard oral argument, the California Supreme Court issued its opinion in *Reilly*, *supra*, 57 Cal.4th 641. We vacated submission to permit the parties to file supplemental letter briefs addressing the effect of *Reilly* on this case. Both the

---

[1] Further code references are to the Welfare and Institutions Code unless otherwise indicated.

district attorney and Rabuck submitted supplemental letter briefs, which we have considered.

As we shall explain, Rabuck cannot prevail on contentions (1), (2), and (4) because *Reilly*, *supra*, 57 Cal.4th at page 646, requires he show that "any fault that did occur under the assessment protocol created a *material* error." Rabuck has not made such a showing. In addition, as to the four contentions made by Rabuck, we conclude (1) the evaluation reports received in evidence were based on new evaluations under section 6601(c); (2) in conducting the evaluations and preparing the reports received in evidence, the evaluators properly followed the 2009 SAP; (3) the 2009 SAP is a legitimate standardized assessment protocol as required by section 6601(c); and (4) the 2009 SAP is a valid and properly promulgated regulation. We therefore deny Rabuck's writ petition.

## OVERVIEW OF THE SVPA SCREENING AND EVALUATION PROCESS

The SVPA provides for involuntary civil commitment of an offender immediately upon conclusion of his or her prison term if the offender is found to be a sexually violent predator. (*Reilly*, *supra*, 57 Cal.4th at p. 646; *People v. Yartz* (2005) 37 Cal.4th 529, 534.) A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) A "diagnosed mental disorder" is defined to include "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

The procedure for commitment under the SVPA begins with an initial screen in which the Secretary of California's Department of Corrections and

3

Rehabilitation (CDCR) determines whether a person in CDCR custody might be a sexually violent predator. (§ 6601, subd. (a)(1).) If the secretary determines the person might be a sexually violent predator, the secretary refers that person to the next level evaluation. (*Ibid.*)

After the secretary's referral, the person is screened by the CDCR and the Board of Parole Hearings in accordance with "a structured screening instrument" developed and updated by the SDSH in consultation with the CDCR. (§ 6601, subd. (b).) "If as a result of this screening it is determined that the person is likely to be a sexually violent predator, the [CDCR] shall refer the person to the [SDSH] for a full evaluation of whether the person meets the criteria in Section 6600." (*Ibid.*)

The procedures for a full evaluation are set forth in section 6601(c) and section 6601, subdivisions (d) through (i). Under section 6601(c) and section 6601, subdivision (d), the person is evaluated by two practicing psychiatrists or psychologists, or by one of each profession. The evaluations must be conducted "in accordance with a standardized assessment protocol, developed and updated by the [SDSH], to determine whether the person is a sexually violent predator as defined in this article." (§ 6601(c).) If both evaluators find the person "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," then the SDSH forwards a request to file a petition for commitment to the county of the person's last conviction. (§ 6601, subd. (d).) If the county's designated counsel concurs with the recommendation, then counsel files a petition for commitment in the superior court. (§ 6601, subd. (i).)

If one of the two professionals performing the evaluation does not conclude the person meets the criteria for commitment as a sexually violent predator, and the other concludes the person does meet those criteria, then the SDSH "shall arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g)." (§ 6601, subd. (e).) If an evaluation by two independent professionals

4

is conducted, a petition for commitment may be filed only if both concur the person meets the criteria for commitment as a sexually violent predator. (§ 6601, subd. (f).)

Upon filing of the SVPA commitment petition, the superior court must review the petition and determine "whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the court determines the petition on its face supports a finding of probable cause, then it must order the person named in the petition to be kept in a secure facility until a probable cause hearing under section 6602 is conducted. (§ 6601.5.) The probable cause hearing must be conducted within 10 calendar days of the issuance of the order finding the petition would support a finding of probable cause. (*Ibid.*)

The purpose of the probable cause hearing is to determine whether "there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) If the court finds probable cause, it orders a trial to determine whether the person is a sexually violent predator under section 6600. (§ 6602, subd. (a).) The person named in the petition must remain in a secure facility between the time probable cause is found and the time trial is completed. (*Ibid.*)

## ALLEGATIONS OF THE PETITION AND THE RETURN

In October 2004, the Orange County District Attorney filed a petition for commitment under the SVPA alleging Rabuck was a sexually violent predator as defined in section 6600. Attached to the SVPA commitment petition was an evaluation report of Rabuck, prepared by Shoba Sreenivasan, Ph.D. Also in October 2004, Judge Robert R. Fitzgerald reviewed the petition and found it stated sufficient facts which, if true, would constitute probable cause to believe Rabuck was likely to engage in sexually violent predatory criminal behavior on his release. As a consequence, Judge Fitzgerald ordered

5

Rabuck to be detained, pursuant to section 6601.5, in a secure facility until the probable cause hearing.

In September 2006, the Orange County District Attorney filed another petition for commitment, alleging Rabuck was a sexually violent predator under the SVPA. Attached to this petition were an evaluation report of Rabuck, dated May 25, 2006, prepared by Dr. Sreenivasan and an evaluation report of Rabuck, dated June 21, 2006, prepared by Clark R. Clipson, Ph.D. In October 2006, Judge Kazuharu Makino reviewed the petition and found it stated sufficient facts which, if true, would constitute probable cause to believe Rabuck was likely to engage in sexually violent predatory criminal behavior on his release. As a consequence, Judge Makino ordered Rabuck to be detained, pursuant to section 6601.5, in a secure facility until the probable cause hearing.

In August 2008, the Office of Administrative Law (OAL) issued 2008 OAL Determination No. 19, in which the OAL determined the 2007 SAP used for SVPA evaluations amounted to an "underground regulation" because portions of the assessment protocol, though regulatory in nature, had not been adopted pursuant to Government Code section 11340.5, part of the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). (2008 OAL Determination No. 19 (Aug. 15, 2008) p. 3, available at <http://www.oal.ca.gov/res/docs/pdf/determinations/2008/2008_OAL_Determination_19 .pdf> [as of Dec. 6, 2013]; see *Reilly*, *supra*, 57 Cal.4th at p. 649.) In *Ronje*, *supra*, 179 Cal.App.4th at pages 516-517, we agreed with the OAL and likewise concluded the 2007 SAP was invalid as an underground regulation. In 2009, the SDSH issued the 2009 SAP as the new standardized assessment protocol for SVPA evaluations. In February 2009, the OAL took emergency regulatory action to adopt part of the 2009 SAP. In September 2009, the OAL made permanent the emergency regulatory action.

6

In response to *Ronje*, in November 2010, Judge James P. Marion[2] ordered new evaluations of Rabuck, pursuant to section 6601, using a valid standardized assessment protocol. In compliance with the court's order, the SDSH reassigned Dr. Sreenivasan and Dr. Clipson to evaluate Rabuck. In a report dated January 15, 2011, Dr. Sreenivasan concluded Rabuck met the criteria for commitment as a sexually violent predator. In a report dated March 5, 2011, Dr. Clipson also concluded Rabuck met those criteria.

A probable cause hearing was conducted over several days in February and March 2012 before the respondent court. Dr. Sreenivasan and Dr. Clipson testified at the probable cause hearing, and their 2011 evaluation reports were received in evidence.

At the outset of the probable cause hearing, Rabuck presented a motion in limine to exclude the 2011 evaluation reports prepared by Dr. Sreenivasan and Dr. Clipson. Rabuck argued those evaluation reports were invalid because they were prepared in accordance with the 2009 SAP, which, he argued, is not a valid standardized assessment protocol under the SVPA and had not been promulgated as a regulation. In support of his motion, Rabuck submitted declarations from two psychologists (Richard Wollert, Ph.D., and Robert L. Halon, Ph.D.), both of whom expressed the opinion that the 2009 SAP is not a "standardized assessment protocol," as that term is understood in the "scientific and psychological community." In opposition, the district attorney submitted a copy of a declaration, dated April 23, 2010, from Amy Phenix, Ph.D., the psychologist who developed the SVPA standardized assessment protocols. Dr. Phenix expressed the opinion the 2009 SAP "comports with the generally accepted definition of a 'standardized assessment protocol'" and "comprises a 'standardized assessment protocol' according to general acceptance in the field of psychology."

---

[2] We recognize and join in the public defender's respect, expressed in the writ petition, for our friend and colleague, the late Judge Marion.

7

On March 19, 2012, the respondent court issued a written ruling that denied Rabuck's motion in limine. The court concluded the 2009 SAP "meets and exceeds the statutory criteria of section 6601, subdivision (c)" and therefore is a standardized assessment protocol. The court also concluded (1) section IV.D. of the 2009 SAP, which requires the evaluators to use certain assessment tools, had been submitted to the OAL as an emergency regulation and approved as a permanent regulation in September 2009 and (2) the rest of the 2009 SAP consists of statements from the SVPA and case law and therefore did not require approval as a regulation by the OAL. The court denied Rabuck's request to cross-examine Dr. Phenix because the court based its ruling "on its own independent review of the 2009 SAP."

On March 23, 2012, the respondent court found, pursuant to section 6602, probable cause existed to believe Rabuck met the criteria for commitment as a sexually violent predator.

### HISTORY OF WRIT PETITION PROCEEDINGS

In May 2012, Rabuck filed this petition for writ of mandate or prohibition to challenge the respondent court's order receiving in evidence the 2011 evaluation reports of Dr. Sreenivasan and Dr. Clipson. We summarily denied Rabuck's writ petition.

Rabuck petitioned the California Supreme Court for review of our order summarily denying his writ petition. He presented four issues for Supreme Court review, one of which was whether Dr. Sreenivasan's January 2011 evaluation report and Dr. Clipson's March 2011 evaluation report were updated or new evaluations. The Supreme Court granted the petition for review and transferred the matter back to us with directions to vacate our order denying mandate and to issue an order directing the respondent court to show cause why the relief requested in the petition for writ of mandate or prohibition should not be granted. We complied with the Supreme Court's

8

directions. The district attorney filed a return to Rabuck's petition for writ of mandate or prohibition, to which Rabuck filed a reply.

After oral argument, we vacated submission to allow the parties to file supplemental letter briefs addressing the impact of *Reilly*, *supra*, 57 Cal.4th 641, on this case. After receiving supplemental letter briefs from the district attorney and Rabuck, we resubmitted the matter.

## DISCUSSION

## I.

### The Evaluators Conducted New Evaluations as Then Required by *Ronje*.

Rabuck argues Dr. Sreenivasan's January 2011 evaluation report and Dr. Clipson's March 2011 evaluation report were updated rather than new evaluations and, therefore, should not have been received in evidence at the probable cause hearing. Under *Reilly*, *supra*, 57 Cal.4th 641, Rabuck cannot prevail even if this argument has merit.

In *Reilly*, the Supreme Court concluded a court is not required to dismiss SVPA commitment proceedings if the OAL determines the initial evaluations supporting the SVPA commitment petition were conducted under a standardized assessment protocol that did not comply with the OAL's procedural requirements. (*Reilly*, *supra*, 57 Cal.4th at p. 646.) "Instead, an alleged sexually violent predator (SVP) must show that any fault that did occur under the assessment protocol created a *material* error." (*Ibid.*) "Absent material error, 'once a petition has been properly filed and the court has obtained jurisdiction, the question of whether a person is a sexually violent predator should be left to the trier of fact . . . .'" (*Id.* at p. 656.) *Reilly* disapproved *Ronje*, *supra*, 179 Cal.App.4th 509, to the extent it required new evaluations using a valid standardized assessment protocol without a showing of material error. (*Reilly*, *supra*, at pp. 655, 656.)

9

Because, under *Reilly*, new evaluations of Rabuck were not required absent a showing of material error in using the 2007 SAP, whether the 2011 evaluation reports of Rabuck were new or updated ones would make no difference to their admissibility at the probable cause hearing. Absent a showing of material error, the 2006 evaluations of Rabuck would be valid and would support filing the SVPA commitment petition, and the 2011 evaluations properly could serve as either new or updated evaluations under section 6603, subdivision (c)(1). Rabuck has not shown that use of an invalid assessment protocol materially affected his initial evaluations. (See *Reilly*, *supra*, 57 Cal.4th at p. 656.) Since evaluators concluded Rabuck was a sexually violent predator under both the 2009 SAP and the one in effect in 2006, "it is clear that the 2007 protocol error did not materially affect the outcome of his probable cause hearing." (*Ibid.*)

Rabuck's contention the evaluations were "updates" rather than "new" has no merit even if it remains viable after *Reilly*. *Ronje* required new evaluations under section 6601(c); that is, evaluations conducted as though no prior diagnosis had been reached and no SVPA commitment petition had yet been filed. In contrast, updated evaluations are permitted under section 6603, subdivision (c)(1), "[i]f the attorney petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment." An updated evaluation might be "crucial" because "a commitment under the [SVPA] must be based on an inmate's 'currently diagnosed mental disorder.'" (*Gray v. Superior Court* (2002) 95 Cal.App.4th 322, 326.)

The evidence supported a finding that Dr. Sreenivasan's January 2011 evaluation report and Dr. Clipson's March 2011 evaluation report were new evaluations of Rabuck. At the probable cause hearing, Dr. Sreenivasan testified her January 2011 evaluation "was an initial evaluation under the *Ronje* case." Dr. Clipson likewise testified his March 2011 evaluation was a new evaluation, which, he explained, is "like starting over."

10

Our review of Dr. Sreenivasan's 74-page January 2011 evaluation report and of Dr. Clipson's 29-page March 2011 evaluation report confirms to us they are new evaluations under section 6601(c), not updated evaluations under section 6603, subdivision (c). Dr. Sreenivasan's January 2011 evaluation report specifically states it is a "WIC 6600 Evaluation Report—Ronje" and that it had been conducted pursuant to a *Ronje* motion. As part of the new evaluations, Dr. Sreenivasan conducted a clinical interview of Rabuck in January 2011, and Dr. Clipson conducted a clinical interview of Rabuck in February 2011. Both evaluation reports show that Dr. Sreenivasan and Dr. Clipson considered Rabuck's entire psychiatric, family, criminal, and qualifying offense history, and reassessed all of the commitment criteria and risk factors. Neither Dr. Sreenivasan nor Dr. Clipson merely updated previous diagnoses; rather, their reports demonstrate they both started anew in reaching the conclusion Rabuck met the criteria for commitment as a sexually violent predator.

## II.
### The Evaluators Followed the 2009 SAP.

Rabuck argues Dr. Sreenivasan and Dr. Clipson, though purporting to use the 2009 SAP, in fact used the 2007 SAP in preparing their 2011 evaluations of him. According to Rabuck, the 2011 evaluation reports prepared by Dr. Sreenivasan and Dr. Clipson demonstrate they used the 2007 SAP because those reports include the same headings, apply the same criteria, make the same findings, and use the same diagnostic tools and risk factors as those required by the 2007 SAP.

Under *Reilly*, if Dr. Sreenivasan and Dr. Clipson used the 2007 SAP in preparing their 2011 evaluation reports of Rabuck, any error would be harmless unless Rabuck made a showing that use of the 2007 SAP resulted in material error. (*Reilly*, *supra*, 57 Cal.4th at p. 656 & fn. 5.) Neither in his writ petition nor his supplemental letter brief addressing *Reilly*, did Rabuck make such a showing. Rabuck does not

11

contend any of the reports prepared by Dr. Sreenivasan and Dr. Clipson, or any of their diagnoses and conclusions, are inaccurate or otherwise invalid.

Nonetheless, our review of the evidence presented in connection with the writ petition leads us to conclude Dr. Sreenivasan and Dr. Clipson followed the 2009 SAP in their 2011 evaluations of Rabuck. At the probable cause hearing, Dr. Sreenivasan testified she followed the 2009 SAP in her 2011 evaluation of Rabuck, and her January 2011 evaluation report states her current evaluation followed the 2009 SAP. At the probable cause hearing, Dr. Clipson also testified he followed the 2009 SAP in his 2011 evaluation of Rabuck.

Rabuck argues Dr. Sreenivasan and Dr. Clipson, their testimony notwithstanding, followed the 2007 SAP "[s]ince each of the doctor's reports contain[s] provisions required by the 2007 SAP, and these same provisions are not required by or even mentioned in the 2009 SAP." Dr. Sreenivasan's and Dr. Clipson's 2011 evaluation reports did follow the format, outline, and structure provided in the 2007 SAP and did include notice, provisions, and findings required by that protocol. But the 2009 SAP does not prohibit them from doing so and does not prescribe a particular format, outline, or structure for an evaluation report. As Rabuck argues, Dr. Sreenivasan's and Dr. Clipson's 2011 evaluation reports used the headings "Identifying Data," "Findings," and "Conclusion" (boldface & some capitalization omitted), which were provided by the 2007 SAP. But those are logical and natural headings for sections within an SVPA evaluation report.

As further proof that Dr. Sreenivasan and Dr. Clipson did not follow the 2009 SAP, Rabuck asserts they drafted their conclusions in a specific format required by the 2007 SAP.[3] Section IV.C. of the 2009 SAP, *supra*, at page 3, identifies the question

---

[3] Dr. Sreenivasan concluded: "Based on the above information, it is the evaluator's professional opinion the respondent meets the criteria as a sexually violent predator as described in Section 6600 (a) of the Welfare and Institutions Code." (Boldface omitted.)

12

the evaluator must answer as "[d]oes the person being evaluated have a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody?" The findings in Dr. Sreenivasan's 2011 evaluation report and Dr. Clipson's 2011 evaluation report track this question and answer it. Dr. Sreenivasan and Dr. Clipson drafted their respective conclusions in a format that is so obvious and logical that it cannot be said to be specific to the 2007 SAP.

Rabuck contends Dr. Sreenivasan and Dr. Clipson followed the 2007 SAP because they used procedures, diagnostic tests, and actuarial risk assessment tools specifically required by that protocol. Unlike the 2007 SAP, which provided detailed instructions on how to conduct a sexually violent predator assessment and prepare an evaluation report, the 2009 SAP relies on each evaluator's exercise of "independent professional judgment in the course of performing SVP [(sexually violent predator)] evaluations." (2009 SAP, *supra*, at p. 1.) The introduction and purpose section of the 2009 SAP states: "Since the exercise of independent, professional clinical judgment is required, this evaluation protocol is not, and cannot be, a detailed, precise step-by-step procedure like the kind of procedure that might apply to the chemical analysis of an unknown substance." (*Ibid.*)

Section IV.D. of the 2009 SAP, *supra*, at pages 3-4, describes the tests or instruments the evaluator may use in evaluating the suspected sexually violent predator: "The evaluator, according to his or her professional judgment, shall apply tests or instruments along with other static and dynamic risk factors when making the assessment. Such tests, instruments and risk factors must have gained professional recognition or acceptance in the field of diagnosing, evaluating or treating sexual offenders and be appropriate to the particular patient and applied on a case-by-case basis.

---

Dr. Clipson concluded: "Based on the above information, in my opinion the patient DOES meet the criteria as a sexually violent predator as described in Section 6600(a) of the Welfare and Institutions Code." (Boldface omitted.)

13

The term 'professional recognition or acceptance' as used in this Section means that the test, instrument or risk factor has undergone peer review by a conference, committee or journal of a professional organization in the fields of psychology or psychiatry, including, but not limited to, the American Psychological Association, the American Psychiatric Association, and the Association for the Treatment of Sexual Abusers. (Title 9, California Code of Regulations Section 4005)."

The 2009 SAP grants the evaluator discretion to exercise his or her professional judgment in how to conduct the evaluation and in deciding which tests, instruments, and risk factors to use. (2009 SAP, *supra*, at p. 3.) Thus, the fact Dr. Sreenivasan and Dr. Clipson decided to follow procedures and practices and to apply tests, instruments, and actuarial risk tools that were required by the 2007 SAP does not mean they failed to use the 2009 SAP. In compliance with the 2009 SAP, Dr. Sreenivasan and Dr. Clipson explained in their respective 2011 evaluation reports how the tests, instruments, and risk factors they chose to use had gained professional recognition or acceptance in the field of diagnosing, evaluating, or treating sexual offenders, how they were applied, and why they were appropriate to Rabuck.

Rabuck contends Dr. Sreenivasan and Dr. Clipson used the 2007 SAP because, at the beginning of their respective 2011 evaluation reports, each stated she or he provided Rabuck with a notice of evaluation as a sexually violent predator, presumably in the form attached as appendix B to the 2007 SAP. The 2009 SAP requires the evaluator at the outset of the assessment to inform the person that the purpose of the evaluation is not treatment but to determine whether the person meets the criteria for commitment as a sexually violent predator. (2009 SAP, *supra*, at p. 3.) The 2009 SAP does not prescribe the form of notice and directs the evaluator to use professional judgment in the course of performing the evaluation. By exercising professional judgment to provide the notice required by the 2007 SAP, Dr. Sreenivasan and Dr. Clipson were acting in compliance with the 2009 SAP.

14

Rabuck also contends Dr. Sreenivasan and Dr. Clipson followed the 2007 SAP by including in their respective 2011 evaluation reports an opinion that Rabuck's future sexual acts and offenses would, or likely would, be predatory in nature. The 2007 SAP required the evaluator to include a statement on the question whether "future sexually violent acts will or will not be predatory" and "a rationale based on the **'likely'** standard defined in the Ghilotti California Supreme Court Decision [(*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888)]." (2007 SAP, *supra*, at pp. 29-30.) But the fact Dr. Sreenivasan and Dr. Clipson answered a question presented by the 2007 SAP does not lead to the conclusion they did not follow the 2009 SAP and meet its requirements.

### III.

### The 2009 SAP Is a Legitimate Standardized Assessment Protocol and Complies with Section 6601(c).

Rabuck argues the 2009 SAP is invalid because it is not a standardized assessment protocol as that term is understood in the scientific and psychological communities. In support of this argument, he relies on the declarations of Dr. Wollert and Dr. Halon, both of whom presented a definition of a standardized assessment protocol, reviewed the 2009 SAP, and concluded it did not come within that definition. The district attorney, in response, relies on Dr. Phenix's declaration. Dr. Phenix, who was instrumental in developing the assessment protocols under the SVPA, declared the 2009 SAP is a standardized assessment protocol according to generally accepted principles of psychology.

The respondent court did not base its decision on the declarations. Instead, the court conducted its own independent review of the 2009 SAP and concluded, "the 2009 SAP is a genuine one because it meets and exceeds the statutory criteria of section 6601, subdivision (c)." Based on statute and California Supreme Court authority, including *Reilly*, we reach the same conclusion.

15

In developing and issuing the 2009 SAP, the SDSH was implementing the requirements of section 6601(c). "'When an administrative agency construes a statute in adopting a regulation or formulating a policy, the court will respect the agency interpretation as one of several interpretive tools that may be helpful. In the end, however, "[the court] must . . . independently judge the text of the statute." [Citation.]'" (*In re Lucas* (2012) 53 Cal.4th 839, 849.) "If a regulation does not properly implement the statute, the regulation must fail." (*Ibid.*)

Section 6601(c) sets forth the requirements for a standardized assessment protocol as follows: "The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." Section 6601(c) imposes no specific requirements on a standardized assessment protocol except that it must include an assessment of diagnosable mental disorders and of "factors known to be associated with the risk of reoffense among sex offenders."

The 2009 SAP properly implements section 6601(c). The 2009 SAP, *supra*, at page 1, states in its introduction and purpose that "[i]n the context of clinical evaluation, a protocol is a plan or framework that serves as a guide for evaluators in performing evaluations." Under our independent construction of section 6601(c), the SDSH's interpretation of the term "protocol" is reasonable. (*In re Lucas*, *supra*, 53 Cal.4th at p. 849.)

The 2009 SAP provides a "plan or framework" by which the evaluator makes the ultimate determination whether the person being evaluated is a sexually violent predator. (2009 SAP, *supra*, at p. 1.) The 2009 SAP has six sections preceded by an introduction and statement of purpose. Section I., entitled "Definitions," sets forth definitions of the terms "Sexually Violent Predator," "Sexually violent offense,"

16

"Diagnosed mental disorder," and "Predatory." (*Id.* at pp. 1-2, boldface omitted.) Section II., entitled "Referral Source," concerns evaluation referrals under section 6601, subdivision (b). (2009 SAP, *supra*, at p. 2.) Section III., entitled "Evaluator Prerequisites," addresses who may perform evaluations and the procedure under section 6601, subdivision (g) if the two initial evaluators disagree. (2009 SAP, *supra*, at pp. 2-3.) Section IV., entitled "Pre-commitment Assessment Process," sets forth the process for conducting an evaluation, the risk factors the evaluator must consider, and the tests or instruments the evaluator should use in the evaluation. (*Id.* at pp. 3-5.) Section IV.F. discusses various court rulings for the evaluator to consider. (*Id.* at pp. 4-5.) Section V., entitled "Assessment Result," briefly explains the procedures if the two evaluators or the two assigned independent evaluators agree the person who was evaluated meets the criteria for commitment as a sexually violent predator. (*Id.* at p. 5.) Section VI., entitled "Other Considerations," discusses examination and cross-examination of evaluators at hearings and trials. (*Id.* at p. 6.)

Section IV.A. of the 2009 SAP, *supra*, at page 3, describes the information the evaluator must give the subject at the outset of the evaluation. Section IV.B. lists the six risk-of-reoffense factors identified in section 6601(c) that the evaluator must consider. (2009 SAP, *supra*, at p. 3.) Section IV.C. identifies precisely the question the evaluator must answer: "Does the person being evaluated have a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody?" (*Ibid.*) As we explained above, section IV.D. then describes the tests or instruments the evaluator may use to answer that question. (*Id.* at pp. 3-4.) Those tests, instruments, and risk factors are the ones which the evaluator has chosen to use according to "his or her professional judgment," have "gained professional recognition or acceptance in the field of diagnosing, evaluating or treating sexual offenders," and are "appropriate to the particular patient and applied on a case-by-case basis." (*Id.* at p. 3.)

17

As required by section 6601(c), section IV.B. of the 2009 SAP, *supra*, at page 3, identifies the risk factors the evaluator must consider, and section IV.D. instructs the evaluator to apply "tests or instruments along with other static and dynamic risk factors," according to the evaluator's professional judgment. Other sections of the 2009 SAP provide necessary definitions, evaluator qualifications, and legal rulings.

As Rabuck asserts, the 2009 SAP, at six pages, is substantially shorter than the 2007 SAP, which was 68 pages in length, and does not provide step-by-step details of how the evaluator must conduct an evaluation. In *Reilly*, the California Supreme Court recognized the difference between the two assessment protocols, but tacitly approved the 2009 SAP. In comparing the 2007 SAP and the 2009 SAP, the Supreme Court stated: "For example, the February 2009 protocol was only six pages long, as compared to the 68-page 2007 protocol. The 2007 protocol gave a step-by-step process for evaluators to follow. The 2009 protocol essentially gives the evaluator more discretion in how to conduct the evaluation, but the evaluator is informed about the requirements of the law, the issue that must be opined on, and the risk factors to consider; these have not changed from the 2007 protocol. (See Cal. Department of Mental Health, Standardized Assessment Protocol for Sexually Violent Predator Evaluations (Feb. 2009) p. 1.)" (*Reilly*, *supra*, 57 Cal.4th at p. 655, fn. 3.) The 2009 SAP satisfies the requirements of section 6601(c), which requires no particular length or any greater level of detail.

## IV.

### The 2009 SAP Was Properly Promulgated as a Regulation.

Rabuck argues that if the 2009 SAP is a legitimate standardized assessment protocol, it is invalid nonetheless because it is an underground regulation that was not promulgated in accordance with the APA. But if the 2009 SAP was not promulgated in accordance with the APA, then Rabuck would have the burden of showing material error

18

(*Reilly*, *supra*, 57 Cal.4th at pp. 646, 656-657); that is, "the invalid assessment protocol materially affected his . . . evaluations" (*id.* at p. 656). He has not done so.

We conclude the 2009 SAP was validly promulgated as a regulation. In 2009, after the OAL determined the 2007 SAP was invalid, the SDSH issued the 2009 SAP as the new standardized assessment protocol for SVPA evaluations. As explained above, the 2009 SAP has six sections preceded by an introduction and statement of purpose. Section IV., entitled "Pre-commitment Assessment Process," sets forth the process for conducting an evaluation, the risk factors the evaluator must consider, and the tests or instruments the evaluator should use in the evaluation. (2009 SAP, *supra*, at pp. 3-4.)

The 2009 SAP was codified in the California Code of Regulations at title 9, division 1, chapter 15, section 4000 et seq., and section IV.D. of the 2009 SAP was codified as California Code of Regulations, title 9, section 4005. In February 2009, the OAL took emergency action to adopt California Code of Regulations, title 9, section 4005, as a regulation. In September 2009, the OAL issued a certificate of compliance to make permanent its prior emergency regulatory action. The OAL approved the regulatory action pursuant to Government Code section 11349.6, subdivision (b), which states: "Emergency regulations adopted pursuant to subdivision (b) of Section 11346.1 shall be reviewed by the office within 10 calendar days after their submittal to the office. After posting a notice of the filing of a proposed emergency regulation on its Internet Web site, the office shall allow interested persons five calendar days to submit comments on the proposed emergency regulations unless the emergency situation clearly poses such an immediate serious harm that delaying action to allow public comment would be inconsistent with the public interest. The office shall disapprove the emergency regulations if it determines that the situation addressed by the regulations is not an emergency, or if it determines that the regulation fails to meet the

19

standards set forth in Section 11349.1, or if it determines the agency failed to comply with Section 11346.1."

The 2009 SAP, other than section IV.D., did not require promulgation as a regulation by the OAL because "[a] regulation that embodies the only legally tenable interpretation of a provision of law" is not subject to the APA. (Gov. Code, § 11340.9, subd. (f); see Cal. Law Revision Com. com., 32D West's Ann. Gov. Code (2005 ed.) foll. § 11340.9, p. 94.) The OAL approved section IV.D. of the 2009 SAP as an emergency regulation, and then made its emergency regulatory action permanent. Thus, the 2009 SAP is a valid regulation adopted pursuant to the OAL in compliance with the APA.

Government Code section 11350 identifies the limited grounds on which the validity of a regulation may be challenged. Under Government Code section 11350, subdivision (a), "[t]he regulation or order of repeal may be declared to be invalid for a substantial failure to comply with this chapter, or, in the case of an emergency regulation or order of repeal, upon the ground that the facts recited in the finding of emergency prepared pursuant to subdivision (b) of Section 11346.1 do not constitute an emergency within the provisions of Section 11346.1." A regulation may be declared invalid by a court because of a ""'substantial failure" to comply with' the APA." (*California Assn. of Medical Products Suppliers v. Maxwell-Jolly* (2011) 199 Cal.App.4th 286, 303.) A regulation may also be declared invalid if "(1) The agency's determination that the regulation is reasonably necessary to effectuate the purpose of the statute, court decision, or other provision of law that is being implemented, interpreted, or made specific by the regulation is not supported by substantial evidence" (Gov. Code, § 11350, subd. (b)(1)) or "(2) The agency declaration pursuant to paragraph (8) of subdivision (a) of Section 11346.5 is in conflict with substantial evidence in the record" (*id.*, § 11350, subd. (b)(2)). Rabuck does not challenge the OAL's approval of section IV.D. of the 2009 SAP on any of the grounds identified in Government Code section 11350.

20

**DISPOSITION**

The petition for writ of mandate or prohibition is denied.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.