Filed 8/13/14  P. v. Reed CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOE TODD REED,<br><br>    Defendant and Appellant. | F065964<br><br>(Super. Ct. No. FP003585A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

Joe Todd Reed appeals an order involuntarily committing him for an indeterminate term to the custody of the State Department of State Hospitals (SDSH) after a jury found him to be a sexually violent predator (SVP) under the Sexually Violent Predators Act (SVPA), within the meaning of Welfare and Institutions Code section 6600 et seq.[1]

Reed contends the order must be reversed because the trial court improperly denied his pretrial motion for appointment of new evaluators. He also contends the trial court improperly declined his request that the jury be instructed on the statutory requirement that, in order to find him to be an SVP, it had to find he had serious difficulty controlling his behavior. We affirm the order of commitment.

**OVERVIEW OF THE SVPA SCREENING AND EVALUATION PROCESS**

The SVPA provides for involuntary civil commitment of an offender immediately upon conclusion of his or her prison term if the offense is found to be sexually violent. (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 646 (*Reilly*); *People v. Yartz* (2005) 37 Cal.4th 529, 534.) An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) A "'[d]iagnosed mental disorder'" is defined to include "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

The procedure for commitment under the SVPA begins with an initial screening in which the Secretary of California's Department of Corrections and Rehabilitation

---

[1] All further references are to the Welfare and Institutions Code unless otherwise stated.

(CDCR) determines whether the person in CDCR custody might be an SVP. (§ 6601, subd. (a)(1).) If the secretary determines the person might be an SVP, the secretary refers that person to the next level evaluation. (*Ibid.*)

The person is then screened by the CDCR and the Board of Parole Hearings in accordance with "a structured screening instrument" developed and updated by the SDSH in consultation with the CDCR. (§ 6601, subd. (b).)[2] "If as a result of this screening it is determined that the person is likely to be a sexually violent predator, the [CDCR] shall refer the person to the [SDSH] for a full evaluation of whether the person meets the criteria in Section 6600." (*Ibid.*)

The procedures for a full evaluation are set forth in section 6601, subdivision (c) (section 6601(c)) and section 6601, subdivisions (d) through (i). Under section 6601(c) and section 6601, subdivision (d), the person is evaluated by two practicing psychiatrists or psychologists, or by one of each profession. The evaluations must be conducted "in accordance with a standardized assessment protocol, developed and updated by the [SDSH], to determine whether the person is a sexually violent predator as defined in this article." (§ 6601(c).) If both evaluators find the person "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," then the SDSH forwards a request to file a petition for commitment to the county of the person's last conviction. (§ 6601, subd. (d).) If the county's designated counsel concurs with the recommendation, then counsel files a petition for commitment in the superior court. (§ 6601, subd. (i).)

---

[2] In 2012, section 6601 was amended and "State Department of Mental Health" was substituted with "State Department of State Hospitals" and "Director of Mental Health" was substituted with "Director of State Hospitals" throughout the section. (Stats. 2012, ch. 24, § 139, pp. 1029-1031, see Stats. 2012, ch. 24, § 208, p. 1056, eff. June 27, 2012.) To avoid confusion, we use the designation SDSH to refer to both the State Department of State Hospitals and its predecessor State Department of Mental Health.

If one of the two professionals performing the evaluation does not conclude the person meets the criteria for commitment as an SVP, and the other concludes the person does meet those criteria, then the SDSH "shall arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g)." (§ 6601, subd. (e).)

Upon filing of the SVPA commitment petition, the superior court must review the petition and determine "whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the court determines the petition on its face supports a finding of probable cause, then it must order the person named in the petition to be kept in a secure facility until a probable cause hearing under section 6602 is conducted. (§ 6601.5.) The probable cause hearing must be conducted within 10 calendar days of the issuance of the order finding the petition would support a finding of probable cause. (*Ibid.*)

The purpose of the probable cause hearing is to determine whether "there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) If the court finds probable cause, it orders a trial to determine whether the person is an SVP under section 6600. (§ 6602, subd. (a).) The person named in the petition must remain in a secure facility between the time probable cause is found and the time trial is completed. (*Ibid.*)

## PROCEDURAL HISTORY

On April 30, 2008, a petition was filed pursuant to section 6600 et seq. seeking to commit Reed as an SVP for an indeterminate term pursuant to the SVPA. The documents in support of the petition included evaluations by two licensed psychologists, one by Dr. Alfred W. Fricke, done on April 4, 2008, and one by Dr. Jeremy Coles, done on March 27, 2008, that Reed met the criteria for commitment as an SVP. On August 12,

2008, the trial court made a finding of probable cause to believe Reed was likely to engage in sexually violent predatory criminal behavior upon his release from custody and remanded Reed into custody pending trial on the petition.

On December 17, 2009, after numerous continuances, Reed filed a motion for new evaluations and a new probable cause hearing. In his motion, Reed cited the recently decided case of *In re Ronje* (2009) 179 Cal.App.4th 509, 516-517 (*Ronje*),[3] in which the court held that the 2007 version of the SDSH's standardized assessment protocol (SAP) for SVP evaluations was an invalid underground regulation, ordered new evaluations using a valid assessment protocol and ordered another probable cause hearing based on the new evaluations.

On December 28, 2009, the People filed a response, agreeing new evaluations, but not new evaluators, should be ordered. The following day, Reed filed a reply, arguing that new evaluators should be appointed to conduct the new evaluations.

On January 4, 2010, the trial court granted Reed's motion for new evaluations and a new probable cause hearing. The court then issued an order that the SDSH conduct new evaluations of Reed using a valid SAP.

On May 17, 2010, Reed filed a motion for appointment of new evaluators, asserting that, in response to the court's order for the preparation of new evaluations, SDSH had reassigned the same evaluators who had previously evaluated Reed pursuant to the now invalid SAP and "[n]ot surprisingly, said evaluators reached the same conclusion that they had under the improperly performed evaluations performed earlier." Reed argued the evaluators had "a prior bias, based on their earlier flawed evaluations, in violation of the due process clauses of the United States Constitution and California Constitution." The People filed opposition to Reed's motion for new evaluators,

---

[3]     Subsequently disapproved in *Reilly, supra,* 57 Cal.4th 641, as will be discussed further. (See fn. 6.)

attaching the new evaluations from Dr. Coles, done on March 2, 2010, and Dr Fricke, done on March 5, 2010.

On June 2, 2010, the trial court denied Reed's motion to appoint new evaluators. In its reasoning on denying the motion, the trial court noted that Reed would have an opportunity to cross-examine the evaluators and stated:

> " … I don't believe there is any evidence before the court or any real argument that would suggest that these [evaluators] can't be fair. They have been told to evaluate under a different protocol. And I … don't think it would be fair to assume that they can't be fair."

At the probable cause hearing on October 19, 2010, Reed's counsel called and examined Dr. Coles. After the deputy district attorney very briefly questioned Dr. Coles, Reed's counsel submitted without calling any further witnesses. The trial court made a finding of probable cause to believe that Reed was likely to engage in sexually violent predatory criminal behavior upon his release from custody and ordered that Reed remain in custody pending trial on the petition.

In September of 2012, a jury found Reed met the criteria for commitment as an SVP. The trial court then ordered Reed committed to the custody of the SDSH for an indeterminate term.

## STATEMENT OF THE FACTS[4]

At trial, Dr. Michael Musacco and Dr. Coles,[5] both licensed psychologists and members of the SDSH's panel of contracted SVP evaluators, testified on their evaluations conducted on Reed. Dr. Musacco evaluated Reed in June of 2012; Dr. Coles first evaluated Reed in 2008 and then performed evaluations in 2009, 2010, 2011, and 2012.

---

[4]     We provide a somewhat abbreviated statement of facts because neither of Reed's two claims on appeal is dependent upon the evidence adduced at trial.

[5]     At the time of trial, Dr Fricke, who had done one of the evaluations that served the basis for the 2010 finding of probable cause, no longer worked on SVP cases.

In making his evaluation, Dr. Musacco reviewed documentation pertaining to Reed provided to him by the SDSH, including arrest reports, probation officer's reports, prison records, and state hospital records where Reed was housed. In Dr. Coles initial evaluation of Reed, he reviewed police reports, probation officer's reports, parole violation reports and prison records. He also conducted a face-to-face interview with Reed and thereafter met with him on an annual basis. In performing the updated evaluations, Dr. Coles considered documentation pertaining to Reed's custody in the state hospital.

Both Dr. Musacco and Dr. Coles opined that Reed met the three-prong criteria for commitment under the SVPA. As for the first prong - whether the person has been convicted of a sexually violent offense against one or more victims (§ 6600, subd. (a)(1)) - both found Reed had been convicted of a sexually violent offense against at least one victim, namely a 1990 violation of section 288, subdivision (a), for orally copulating a 10-year-old boy. They also found that, following his release from jail, Reed violated probation by inappropriately touching a 12-year-old girl and was sentenced to prison. In the early 1980s, when Reed was approximately 16 years old, he was made a ward of the court after he orally copulated a seven-year-old boy and attempted to penetrate an eight-year-old girl he was babysitting. In 2004, Reed was arrested while on parole after he exposed himself to three or four girls, ages 4 to 11 years old. In 2005, Reed fled to Oregon, where he was convicted of a misdemeanor by providing pornographic material to a 12-year-old boy.

Dr. Musacco and Dr. Coles opined that Reed met the second criteria for commitment under the SVPA - whether he suffered from a diagnosed mental disorder (§ 6600, subd. (a)(1)) - because both diagnosed Reed as suffering from pedophilia, non-exclusive type, and from poly-substance dependence, alcohol and methamphetamine. Reed admitted he had not been able to control himself in previously offending and had

7.

had sexually arousing thoughts and urges focused on young children from the time he was 16 years old until several years ago.

As far as the third criteria for commitment under the SVPA - whether Reed's diagnosed mental disorder(s) made it likely he would commit future criminal acts of a sexually violent and predatory nature (§ 6600, subd. (a)(1)) - Dr. Musacco and Dr. Coles opined that Reed presented a serious and well-founded risk of reoffense because his emotional and volitional capacity was impaired. Using the Static-99R, an actuarial risk instrument used to estimate a person's risk of reoffense, Dr. Musacco scored Reed at a 7 or 8; Dr. Coles scored him at a 7. A score of 5 or more places a person in the high-risk category for reoffense. Factors considered in determining whether Reed was likely to reoffend included Reed's difficulty in establishing or maintaining intimate relationships with others, his demonstrated lack of ability to cooperate with supervision, and the fact that Reed had not participated in sex offender treatment while in the state hospital because he did not think it would be helpful. Also considered was the fact that Reed's crimes had been predatory in nature and that he had established a relationship with the victims for the purpose of victimization.

*Defense*

Dr. Robert Halon, a licensed psychologist and one time member of the SDSH panel of contracted SVP evaluators, met with Reed in 2008 at the request of his attorney. At that time, Dr. Halon reviewed documentation pertaining to Reed and, since then, would "make contact" with Reed's attorney "probably once a year." (Capitalization omitted.) As a result, Dr. Halon received documentation from Reed's time in the custody of the state hospital.

Dr. Halon opined that Reed did not meet the second criteria for commitment under the SVPA---he did not suffer from a diagnosed mental disorder. According to Dr. Halon, Reed's pedophilia was in remission because, over the past year, "there's no evidence that [Reed] continues to have intense and recurrent fantasies and urges with interests in

8.

children." (Capitalization omitted.) In Dr. Halon's view, Reed had not exhibited any behavior while in the state hospital indicative of a "volitional impairment with regard to his sexual behavior." (Capitalization omitted.)

## DISCUSSION

I.  DID THE TRIAL COURT ERR WHEN IT DENIED REED'S PRE-TRIAL MOTION FOR APPOINTMENT OF NEW EVALUATORS?

In August 2008, the Office of Administrative Law (OAL) issued 2008 OAL Determination No. 19, in which the OAL determined the 2007 version of the SDSH, Clinical Evaluator Handbook and Standardized Assessment Protocol (Aug. 2007) (2007 SAP), used for SVPA evaluations, amounted to an "underground regulation" because portions of the assessment protocol, though regulatory in nature, had not been adopted pursuant to Government Code section 11340.600, part of the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). (2008 OAL Determination No. 19 (Aug. 15, 2008) p. 3; see *Reilly, supra,* 57 Cal.4th at p. 649.)

As noted earlier, in *Ronje, supra,* 179 Cal.App.4th 509, the court concluded the 2007 SAP being used by the doctors in SVP cases was invalid as an "underground regulation." The court directed that new evaluations be conducted using a valid assessment protocol. (*Id.* at pp. 516-517, 519.) Subsequently, in 2009, the SDSH issued the Standardized Assessment Protocol for Sexually Violent Predator Evaluations (Feb. 2009) (2009 SAP), as the new SAP for SVPA evaluations. In February of 2009, the OAL took emergency regulatory action to adopt part of the 2009 SAP. In September of 2009, the OAL made permanent the emergency regulation action.

In response to *Ronje,* because Reed's original evaluations had been performed pursuant to the invalid 2007 SAP, the trial court granted his motion for new evaluations. However, as acknowledged by Reed, *Ronje* did not address whether the new evaluations

9.

should be conducted by new evaluators.[6]  Reed now contends that the trial court erred and violated his due process rights when it denied his May 17, 2010, motion for appointment of new evaluators to perform new evaluations and that reversal is required. As argued by Reed, "by having the same evaluators/doctors prepare the new evaluations, the opinions expressed in the new evaluations [] were exactly the same as those of the old, improperly made evaluations," which "seriously compromised the appearance of fairness so necessary in judicial proceeding and thus violated [Reed's] right to due process."

We agree with Reed that "[t]he dignitary requirements of procedural due process dictate that not just bias in fact but the appearance of bias and impropriety are due process considerations."  (*People v. Hernandez* (1984) 160 Cal.App.3d 725, 747.)  But we do not find any bias or appearance of bias here.

In *In re Hancock* (1977) 67 Cal.App.3d 943 (*Hancock*), on which Reed relies, the appellate court found that due process required resentencing the defendant before another judge.  In *Hancock,* the defendant, a police officer, pled guilty to one count of first degree burglary.  Prior to sentencing, the assigned deputy district attorney learned that the case might have been transferred to an overly lenient sentencing judge.  After the chief deputy district attorney spoke to the supervising judge in chambers, the supervising judge transferred the case to himself, denied the defendant probation and sentenced him to prison.  (*Id.* at pp. 945-947.)  On appeal, the court found that "[t]he appearance of justice is not satisfied where the People behind closed doors have been the moving force in the transfer of this case from the assigned judge and where the People have made ex parte

---

**6**    *Reilly, supra,* 57 Cal.4th 641 disapproved *Ronje, supra,* 179 Cal.App.4th 509, to the extent it required new evaluations using a valid SAP without a showing of material error.  (*Rabuck v. Superior Court* (2013) 221 Cal.App.4th 1334, 1343.)

10.

statements to the sentencing judge which are adverse to the defendant's interest." (*Id.* at p. 949.)

Reed argues that, just as a new judge can be assigned to ensure an appearance of fairness, "so should the trial court in this case have ordered the appointment of new evaluators." We disagree.

As stated by the trial court in denying Reed's motion for appointment of new evaluators, it would be unfair to assume that the evaluators who conducted the original evaluations could not be fair in evaluating Reed under the new protocol. And, as also stated by the trial court, contrary to the defendant in *Hancock* who was not afforded an opportunity to object to adverse statements made outside of court, Reed was not without an opportunity to respond to the evaluations. Instead, he would be and was provided an opportunity to cross-examine the doctors, further negating Reed's claim of an appearance of unfairness.

When a trial court sentencing error mandates reversal in criminal matters, we routinely remand those cases for re-sentencing to the same trial judge who imposed the original sentence. (See, e.g. *Peracchi v. Superior* Court (2003) 30 Cal.4th 1245, 1256.) For these same reasons, we find that the trial court's refusal to appoint new evaluators in the instant case does not compromise the appearance of fairness essential to due process and our basic conceptions of justice. We reject Reed's claim to the contrary.

II.  DID THE TRIAL COURT ERR WHEN IT DECLINED REED'S REQUEST THAT IT INSTRUCT THE JURY ON THE REQUIREMENT THAT IT FIND HE HAD SERIOUS DIFFICULTY IN CONTROLLING HIS BEHAVIOR?

Relying on *Kansas v. Crane* (2002) 534 U.S. 407 (*Crane*), Reed contends that, under both state and federal law, the trial court erred prejudicially by not instructing the jury that the statutory requirement for finding Reed likely to reoffend meant it had to find he had "serious difficulty in controlling his behavior."

*Background*

The trial court instructed the jury with CALCRIM No. 3454, in pertinent part, as follows:

"The petition alleges that Joe Reed is a sexually violent predator. To prove this allegation, the People must prove beyond a reasonable doubt that: [¶] One, he has been convicted of committing sexually violent offenses against one or more victims; [¶] Two, he has a diagnosed mental disorder; [¶] And three, as a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior. [¶] The term 'diagnosed mental disorder' include[s] conditions either existing at birth or acquired after birth that affect a person's ability to control emotions and behavior and predispose that person to commit criminal sex acts to an extent that makes him or her a menace to the health and safety of others. [¶] A person is likely to engage in sexually violent predatory behavior if there is a substantial, serious and well-founded risk that the person will engage in such conduct if released into the community." (Capitalization omitted.)

At a hearing on jury instructions, the trial court considered and rejected Reed's trial counsel's request to give the following special instruction:

"In order to find that respondent to be [*sic*] a sexually violent predator there must be proof that he has serious difficulty in controlling his behavior. This difficulty in controlling behavior, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case."

*Applicable Law and Analysis*

The California Supreme Court rejected a substantially similar argument to that made by Reed in *People v. Williams* (2003) 31 Cal.4th 757, 774-776 (*Williams*).

In *Williams* the petitioner challenged his commitment under the SVPA, arguing the jury in his case did not receive a special, specific instruction regarding the need to find serious difficulty in controlling behavior. (*Williams, supra,* 31 Cal.4th at pp. 759-760.) The *Williams* court held that specific impairment-of-control instructions are not

12.

constitutionally required in California. (*Id.* at pp. 776-777.) The court reasoned the language of the SVPA "inherently encompasses and conveys to a fact finder the requirement of a mental disorder that causes serious difficulty in controlling one's criminal sexual behavior." (*Id.* at p. 759.)

The *Williams* court also expressly found that "[*Crane*], *supra,* 534 U.S. 407, does not compel us to hold that further lack-of-control instructions or findings are necessary to support a commitment under the SVPA." (*Williams, supra,* 31 Cal.4th at pp. 774-775, fn. omitted.) In reaching this conclusion, the California Supreme Court emphasized: "[A] judicially imposed requirement of special instructions *augmenting* the clear language of the SVPA would contravene the premise of … [*Crane*]*, supra,* 534 U.S. 407, that, in this nuanced area, the *Legislature* is the primary arbiter of how the necessary mental-disorder component of its civil commitment scheme shall be defined and described." (*Id.,* at p. 774, italics in original.)

Reed acknowledges *Williams* but argues it was wrongly decided, noting Justice Kennard filed a concurring opinion in *Williams* in which she suggested that in future SVPA cases it "would be prudent" to explain to jurors "that defendants cannot be found to be sexually violent predators unless they have serious difficulty in controlling their behavior." (*Williams, supra,* 31 Cal.4th at p. 780 (conc. opn. of Kennard, J.).) But no other justice joined in that recommendation, and it therefore lacks precedential value. Furthermore, we summarily reject Reed's argument since this court is bound by the majority in *Williams*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Because no separate instruction on the issue of control is required when the jury is instructed in the statutory language of the SVPA (*Williams, supra,* 31 Cal.4th at pp. 776-777), and Reed makes no contention the jury instructions given in his case failed to follow the statutory language of the SVPA, we conclude no error arose from the trial court's failure to give the special instruction requested by Reed's trial counsel.

13.

**DISPOSITION**

The order is affirmed.

_____
Franson, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Detjen, J.